CRYSTAL LAKE CHEESE FACTORY, Petitioner-
Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Susan
Catlin, Respondents-Respondents.

Court of Appeals

*No. 02–0815. Submitted on briefs September 16, 2002.—Decided
October 8, 2002.*

2002 WI App 290

(Also reported in 654 N.W.2d 286.)

† Petition to review granted 2-19-03.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert H. Duffy, Sean M. Scullen* and *Quarles & Brady LLP* of Milwaukee.

On behalf of the respondent-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

On behalf of the respondent-respondent Susan Catlin, the cause was submitted on the brief of *Monica Murphy* and *Wisconsin Coalition for Advocacy* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.   Crystal Lake Cheese Factory appeals a circuit court order affirming a Labor and Industry Review Commission (LIRC) decision that reversed a Department of Workforce Development Equal Rights Division administrative law judge's (ALJ) findings. LIRC found that Crystal Lake violated the Wisconsin Fair Employment Act (WFEA), WIS. STAT. § 111.31 through 111.395.[1] Specifically, LIRC determined that Crystal Lake had discriminated against Susan Catlin by refusing to modify her job duties and make physical modifications to the workplace after an automobile accident left Catlin a quadriplegic confined to a wheelchair. LIRC ordered Crystal Lake to offer Catlin reinstatement and pay back wages. Crystal Lake petitioned the circuit court for judicial review, and the court affirmed LIRC's decision. Crystal Lake now appeals, arguing that LIRC erred by holding there were

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

reasonable accommodations the factory could make for Catlin without creating a hardship for itself. We reject Crystal Lake's arguments and uphold the circuit court order affirming LIRC's decision.

### Facts

¶ 2.　Crystal Lake operates a cheese factory in Comstock. It processes milk into several varieties of cheese, which it packs and markets under its own and several other brand labels. Catlin began working there in August of 1995 as a cheese cutter but was promoted to department head/lead worker shortly after starting. Catlin worked in the wholesale department, which consisted of four positions:　department head, cheese cutter, cryovacer (packager), and labeler.

¶ 3.　As department head, Catlin's primary duties were to gather store orders and make a direction sheet for the cutter containing a list of sizes and types of cheese to be cut that day, although she would also assist with assembling and labeling boxes and weighing, pricing, and boxing cheese. The cutter would take the instruction sheet, remove the cheese from the cooler, cut it, and set the pieces on a table. The cryovacer would then bag the pieces and place them in the cryovac machine to remove the air from the packages. After removing the air, the cryovacer gave the packages a quick hot water bath to shrink the wrapper around the cheese. The pieces were then labeled, weighed, priced, boxed and loaded onto a palette for storage. The wholesale department workers would also occasionally take a load of cheese to the factory store or help load semi-trucks, although truck loading primarily occurred around Christmas. All four workers in the department were trained for all four positions and would assist each

other as necessary if any person fell behind or if the department was busier than usual.

¶ 4. In November 1996, Catlin was in an automobile accident that left her a quadriplegic. Catlin's coworkers called her during her hospitalization. In one of these calls, company president Tony Curella told Catlin her job would be available "no matter what." After treatment, recovery, and rehabilitation, Catlin believed she was ready to return to work in September 1997 and contacted Crystal Lake. She asked to speak to Curella, although he never returned her calls.

¶ 5. Curella then received a phone call from the Rice Lake Vocational Rehabilitation Center to discuss Catlin's return to work. Curella was surprised by the call and contacted his insurance company, which suggested he have an analysis of the workplace completed to see if there were any accommodations that could be made. The insurer sent information on a company called "Job Accommodation Network."

¶ 6. Curella instead hired David Johnson from Genex Services. Johnson surveyed Crystal Lake to determine whether a person in a wheelchair could perform Catlin's job. The only information Johnson had about Catlin was that she was in a wheelchair. Johnson concluded that no accommodations could be made to the job site because Catlin would be unable to perform all of the functions of all four positions in the wholesale department. Curella had informed Johnson that the ability to perform all of the functions was a necessary component of Catlin's position. Johnson also noted Catlin would have difficulty pulling and stocking inventory because of its weight and storage up to seven feet above the floor.

¶ 7. On the basis of Johnson's report, Crystal Lake concluded that it could make no accommodations

for Catlin. Crystal Lake never contacted Catlin, however, and she only realized her employment had been terminated when she received instructions for withdrawing funds from her retirement plan.

¶ 8.  When Catlin sought reinstatement she was capable of performing most of her job-related duties.[2] She could not, however, lift forty-pound blocks of cheese, load or unload the hand cart or truck for transporting the cheese, reach boxes or cheese stored at high levels, operate the cheese-cutting machine or give the packages the water bath.

¶ 9.  To facilitate performance of her duties, some physical modifications to the plant would be required. The main entrance had a three-inch lip on the threshold that would have to be altered, or a ramp would have to be provided. The sanitizer area, through which employees normally walked, would have to be modified for the wheelchair to pass through. At the time Catlin sought reinstatement, she did not need a restroom because she was using a catheter, but by the time of the hearing, Catlin required an accessible restroom.

¶ 10.  LIRC found that Crystal Lake's refusal to alter Catlin's job responsibilities to exempt her from certain tasks constituted a denial of a reasonable accommodation. LIRC also determined that the refusal to make physical alterations was a denial of a reasonable accommodation. The trial court affirmed, and Crystal Lake appeals.

[2] Crystal Lake disputes this. However, as explained in this opinion, we uphold LIRC's factual findings if supported by the record. *See* ¶¶ 11 and 30, *infra.*

## Standard of Review

¶ 11. We review the decision of LIRC, not the subsequent decision of a trial court. *Target Stores v. LIRC*, 217 Wis. 2d 1, 11, 576 N.W.2d 545 (Ct. App. 1998). We will affirm LIRC's findings of fact if they are supported by substantial evidence. *Id.* We give LIRC's interpretation of a statute varying degrees of deference depending on LIRC's obligations in administering the statute, its experience in doing so, and the nature of the determination it made. *Id.* at 13.

¶ 12. In *Target*, we determined that we would give great weight to LIRC's interpretation of "reasonable accommodation" under Wis. Stat. § 111.34(1)(b).[3] *Target*, 217 Wis. 2d at 13. This is because LIRC was charged with adjudicating appeals from the hearing examiner under the WFEA; LIRC has developed experience in interpretation of the WFEA since it was enacted in 1981; our deference will promote greater uniformity and consistency than if we did not defer; the interpretation of "reasonable accommodation" is mixed with fact-finding; and the interpretation involves value and policy judgments about the employers and employees when an employee is handicapped. *Id.* Under the great

---

[3] Wisconsin Stat. § 111.34(1)(b) states:

(1) Employment discrimination because of disability includes, but is not limited to:

. . . .

(b) Refusing to reasonably accommodate an employee's or prospective employee's disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise or business.

weight standard of review, we will uphold LIRC's interpretation of the statute if it is reasonable and not contrary to the clear meaning of the statute, even if we conclude that another interpretation is more reasonable. *Id.* at 13–14.

¶ 13. *Target* notwithstanding, Crystal Lake urges us to adopt a de novo standard of review because it claims the issue before LIRC was one of first impression or, in the alternative, because LIRC's interpretation of the WFEA is inconsistent with prior interpretations. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 285, 548 N.W.2d 57 (1996). However, LIRC has interpreted "reasonable accommodation" many times before; the unique facts here do not necessarily make the question one of first impression. *See McMullen v. LIRC*, 148 Wis. 2d 270, 276, 434 N.W.2d 830 (Ct. App. 1988) (what is reasonable depends on the specific facts in each case). Further, we are not convinced LIRC's interpretation of the statute is inconsistent with previous decisions.

### LIRC's Rejection of the ALJ's Findings

¶ 14. We address this issue first because Crystal Lake claims its due process rights were violated when LIRC rejected some of the ALJ's factual findings. If LIRC improperly rejected the ALJ's findings, the factual underpinnings of this case would change and could require a different result.

¶ 15. Crystal Lake claims LIRC erred in three ways. First, it argues that LIRC improperly changed the ALJ's finding that Catlin "regularly" performed certain functions to a finding that she performed them "not . . . very frequently." Second, Crystal Lake claims LIRC erred when it rejected other determinations of

the ALJ, "including the quality of Catlin's testimony concerning the job functions she believed she was able to perform." Finally, it argues that LIRC erred when it rejected the testimony of the operations manager regarding a $47,000 estimate for creating a wheelchair accessible restroom.

¶ 16.  Even if LIRC chooses to substitute its credibility determination for that of the ALJ, this does not always constitute a due process violation. *Hoell v. LIRC*, 186 Wis. 2d 603, 613, 522 N.W.2d 234 (Ct. App. 1994). LIRC may reject the ALJ's recommendation in making its final decision, provided it consults the ALJ to determine his or her impressions of the credibility of witnesses and explains in a memorandum opinion why it disagreed with the ALJ. *Id.* However, as explained below, none of LIRC's "reversals" in this case was based on credibility of witnesses; we therefore decline to say LIRC was required to consult with the ALJ to make its factual determinations and we conclude that there was no error.

¶ 17.  The ALJ found Catlin's duties were to prioritize orders and pass them on to the cutter; help label, weigh, price, and pack the cheese; and help load and move pallets. Also, the workers in the wholesale department regularly assisted each other. The ALJ then found that Catlin could perform some, but not all, of the duties for each position. The ALJ did not, however, make specific findings regarding which of the duties of her own position she could or could not perform, except to note only that Catlin could no longer retrieve cheese stored at high levels. The ALJ concluded that to accommodate Catlin, her duties would have to be modified so that even when she was acting as the cutter, she would

not be required to retrieve the cheese. The ALJ concluded that this was not a reasonable accommodation.

¶ 18.   Crystal Lake suggested at the hearing, and continues to maintain, that Catlin's inability to perform all the functions of all the positions "is reasonably related to [her] ability to adequately undertake the job-related responsibilities . . . ." *See* WIS. STAT. § 111.34(2)(a). In other words, Crystal Lake contended that a "reasonable accommodation" is one that permits a disabled employee to perform all job responsibilities. It does not include creating a new job by modifying or eliminating pre-disability job responsibilities. Thus, Crystal Lake argued that it had a statutory defense to the duty to reasonably accommodate. The ALJ apparently agreed with this interpretation.

■■

¶ 19.   LIRC, contrary to Crystal Lake's proffered interpretation, considered "reasonable accommodation" under WIS. STAT. § 111.34(1)(b) to include some modification to the job responsibilities of a handicapped employee unless the employer could show the modification would cause hardship. LIRC's rejection of the ALJ's conclusion goes to statutory interpretation, not credibility of witnesses. LIRC is not required to consult the ALJ before it overturns the ALJ's legal conclusions.

¶ 20.   Additionally, LIRC found that Catlin could perform most of the duties in the department. However, the tasks LIRC specifically mentioned Catlin could *not* perform—lifting and cutting blocks of cheese and giving the packages a water bath—were duties assigned to the cutter and the cryovacer respectively. Despite the fact that Catlin filled in for these positions when needed, LIRC's statement that Catlin performed these duties infrequently does not directly contradict the ALJ, who specified no shared tasks.

¶ 21. LIRC's rejection of the $47,000 restroom estimate was appropriate as well.[4] LIRC concluded first that, when Catlin sought reinstatement, she did not require a bathroom because she was using a catheter. Thus, the $47,000 could not have been an issue at the time Catlin asked to return to work. However, by the time of the administrative hearing, Catlin no longer needed the catheter and could use an accessible restroom. The only testimony regarding the amount was from an operations manager who testified that a contractor gave him that estimate. There is no written estimate for modifications in the record.

¶ 22. Administrative bodies are not bound by the same formal rules of evidence as the courts. *See* WIS. STAT. § 227.45. Neither side disputes that the manager's testimony about the estimate is uncorroborated hearsay. Crystal Lake argues that because Catlin did not object, the evidence became part of the record. *See Schlichting v. Schlichting*, 15 Wis. 2d 147, 160, 112 N.W.2d 149 (1961) (hearsay evidence received without objection becomes part of the evidence of the case and may be used as proof).

■

¶ 23. The ALJ's sole finding based on the estimate was, "[t]o accommodate Catlin's disability would require . . . the addition of a bathroom at an approximate cost of $47,000.00." LIRC accepted the amount of the estimate, but had to further consider the estimate in the context of hardship to the employer, something the ALJ never explicitly addressed. It is the function of the commission to weigh and draw inferences from the

[4] The ALJ apparently thought this constituted a hardship for Crystal Lake, but he did not make a formal factual finding that the cost was prohibitive.

evidence. *See William Wrigley, Jr. Co. v. DOR*, 153 Wis. 2d 559, 571,. 451 N.W.2d 444 (Ct. App. 1989). LIRC explained in its opinion that it ultimately discounted the estimate because the bathroom was irrelevant at the time Catlin sought reinstatement and because the record as a whole did not support a finding of hardship to Crystal Lake. LIRC did not improperly reject or overrule any of the ALJ's findings relating to the estimate, because the ALJ never made a finding beyond the actual dollar figure.

## Reasonable Accommodation and the Job

### A. Statutory Requirements

■

¶ 24.  In a handicap discrimination suit under the WFEA, the complainant must show (1) that he or she is handicapped within the meaning of the WFEA and (2) that the employer took one of the enumerated actions based on that handicap. *Target*, 217 Wis. 2d at 9. In this case, no party disputes that Catlin is handicapped or that Crystal Lake took an action based on her handicap.

■

¶ 25.  Once the complainant makes those two showings, the employer then has a burden of proving a defense under WIS. STAT. § 111.34. Section 111.34(1)(b) does not require an employer to make even a reasonable accommodation if the accommodation will impose a hardship on the employer. However, if an employer refuses to reasonably accommodate and is *not* able to demonstrate that the accommodation would pose a hardship, the employer violates the WFEA. *Target*, 217 Wis. 2d at 9–10. Under § 111.34(2)(a), it is not a violation of the WFEA to take a specified employment action

such as firing an employee if "the disability is reasonably related to the individual's ability to adequately undertake the job-related responsibilities of that individual's employment . . . ."

¶ 26. WISCONSIN STAT. § 111.34(2)(a), however, does not indicate whether an individual's disability must be related to his or her ability to undertake "some," "most," or "all" of the job-related responsibilities. This leaves § 111.34 as a whole open to multiple interpretations, and LIRC and Crystal Lake suggest conflicting interpretations.

¶ 27. Crystal Lake's interpretation is that under WIS. STAT. § 111.34(2)(a), there is no job discrimination when an employer fires a disabled employee if the employee is no longer able to undertake *all* of the former job-related functions. Thus, Crystal Lake argues, a modification of job duties eliminating some of the employee's prior duties is per se an unreasonable accommodation under § 111.34(1)(b).

¶ 28. LIRC interprets WIS. STAT. § 111.34(2)(a) as not necessarily requiring an employee be able to perform all of the job-related functions, only some or most. As long as the employee can perform some of the job responsibilities, modification of the duties may be a reasonable accommodation that the employer should make.[5] The burden therefore shifts back to the employer to demonstrate that the accommodation of modifying the job would create a hardship for the employer.

---

[5] We reiterate that LIRC makes its determination of what constitutes a "reasonable accommodation" on the facts of each case. *See* ¶ 13, *infra*. Therefore, the result in this case does not necessarily create a broad rule for subsequent cases.

¶ 29. We are required to give great weight to LIRC's interpretation of the statute unless the interpretation clearly contradicts the plain meaning of the statute. *See* ¶ 12, *infra*. Because LIRC's reading of Wis. Stat. § 111.34 is not inherently contradictory to the statute's plain meaning, we accept its interpretation and reject the meaning advanced by Crystal Lake.

## B. Discussion

¶ 30. LIRC accepted Catlin's testimony that she could perform nearly all the functions she did prior to her accident and found that Crystal Lake's refusal to modify Catlin's duties to exempt her from the heaviest physical tasks constituted a denial of a reasonable accommodation, which we conclude is an acceptable interpretation of Wis. Stat. § 111.34(1)(b). Crystal Lake nonetheless maintains (1) that a finding Catlin could perform nearly all of her former tasks is unsupported by the record and (2) that, even so, a modification to her position amounts to creating a new job and is an unreasonable accommodation. Crystal Lake also suggests that this "new job" would create a hardship for the factory. However, the evidence supports a finding that Catlin could perform most of her duties, and we are unconvinced that the accommodation LIRC suggests is unreasonable or likely to create a hardship for Crystal Lake.

¶ 31. Catlin testified about what she thought she could do and what she knew she could not. There is no testimony that refutes this, other than Johnson's report and a report prepared by Jeffrey Annis, a vocational rehabilitation specialist. Johnson's report, see ¶ 6 *infra,* was based only on the information that Catlin was in a wheelchair. Annis' report, slightly more illuminat-

429

ing, concentrated primarily on physical modifications that would be necessary, although it did note some limitations Catlin would have. Annis noted that Catlin would be unable to lift the forty-pound blocks of cheese and that she would be unable to operate the cutter. He indicated that the cryovac might be difficult to reach, and that the tables seemed too high for Catlin to work comfortably. Catlin only disputed that the tables would be too high, stating she had done her own measurements at home and felt comfortable working at the table height. Because Catlin's testimony as to her ability is primarily uncontroverted, it is substantial enough for LIRC to have relied upon it.

¶ 32. Catlin testified, and Crystal Lake never disputed, that when she started there was little or no cross-training. This suggests that performance of all tasks in all positions by all workers was not previously a requirement. Thus, if Catlin, as supervisor or department leader was unable to perform the functions of, for example, the cutter, exempting her from the cutter's function is not a novel idea.

¶ 33. Moreover, the testimony suggests that when things were busy or backed up, each of the workers did whatever they could to get the department back on track. In other words, the position-specific job functions were pooled and no longer attributable to any one individual or position. Given this pooling, we see no reason why, as LIRC suggests under WIS. STAT. § 111.34(1)(b), Crystal Lake could not implement a new arrangement that required the other workers to cover the tasks Catlin could not, rather than allowing the random coverage that repeatedly occurred.

¶ 34. Although Crystal Lake hints that a modification like the one LIRC suggested would create a hardship thus exempting it from any accommodation,

we see nothing in the record to support this contention. Crystal Lake merely asserts that the production process would have been slowed down when the cutter and cryovacer would have to help Catlin with the physical tasks. But Crystal Lake does not explain the consequences of a slowdown in this instance. Conceivably, the slowdown could result in incomplete orders, decreased output, or a loss of revenue and clients. But Crystal Lake does not argue, much less demonstrate, that these would be the results of modifying Catlin's job.

¶ 35.    Moreover, testimony indicated that each worker helped out "whenever needed." We see no reason why the help Catlin would need with some tasks would be any different from another worker requiring assistance when production became backed up or the worker needed to step out for a moment. Because Crystal Lake has not proven hardship, it established no defense under WIS. STAT. § 111.34(1)(b).

### Reasonable Accommodation and the Physical Plant

¶ 36.    The Crystal Lake plant would need modifications to make the buildings accessible, such as altering a three-inch lip at the main entrance, redesigning the walk-through sanitizer to allow the wheelchair through, widening the halls and changing room, and installing an accessible restroom.

¶ 37.    While we acknowledge that costs of changing the physical plant may sometimes constitute a hardship, Crystal Lake has provided no evidence that the required alterations would create a hardship. The evidence submitted—the $47,000 estimate for the

431

bathroom—was properly rejected by LIRC. Even assuming this estimate were allowed, Crystal Lake made no showing of revenue and costs that would give us a context in which to consider whether $47,000 would create a hardship. Because Crystal Lake offered no evidence to show that modifications to the physical plant would create a hardship, we affirm LIRC's conclusion that failure to modify the building violated the WFEA.

¶ 38. We decline to remand this case to give Crystal Lake the opportunity to show hardship. It chose to proceed on the legal theory that LIRC required it to create a new job and that this was unreasonable under the statute. It could have opted to present alternative evidence regarding hardship, but it did not. We will not remand merely because a party's trial strategy backfires. *See State v. McDonald*, 50 Wis. 2d 534, 538, 184 N.W.2d 886 (1971). The order of the circuit court upholding LIRC's decision is affirmed.

*By the Court.*—Order affirmed.