Kip D. ERICKSON, Petitioner-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Quad/Graphics, Inc., Respondents-Respondents.

Court of Appeals

*No. 2004AP3237. Submitted on briefs June 22, 2005.*
*—Decided August 3, 2005.*

2005 WI App 208

(Also reported in 704 N.W.2d 398.)

† Petition to review denied 10-14-05.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John S. Williamson, Jr.*, Appleton.

On behalf of the respondent-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *David C. Rice*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the respondent-respondent Quad/Graphics, Inc., the cause was submitted on the brief of *Stacie J. Andritsch* and *Thomas W. Scrivner* of *Michael Best & Friedrich LLP*, Waukesha.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Kip D. Erickson appeals from a judgment affirming a decision of the Labor and Industry Review Commission. LIRC decided that Quad/Graphics, Inc. (Quad) did not unlawfully discriminate

against Erickson on the basis of disability because it concluded Erickson failed to prove that he was an "individual with a disability" within the meaning of the Wisconsin Fair Employment Act (WFEA). *See* WIS. STAT. § 111.32(8) (2003–04).[1] The circuit court agreed, stating that "the transcript indicates that [Erickson] has wholly failed to meet his factual burden with respect to either disability (permanent or otherwise)." Erickson contends that the court erred because he has established that he is an individual with a disability within the meaning of the WFEA. We disagree with Erickson and affirm the judgment of the circuit court.

## FACTS

¶ 2. Quad hired Erickson as a janitor in February 1996. Erickson performed various cleaning duties at the plant, including waxing and refurbishing floors. On April 10, 2000, Erickson injured his back while operating a walk-behind scrubbing machine. He completed and submitted an injury report, stating that he had been "operating the walk behind scrubbing machine, pushing it to clear lower imaging floors when back muscles tightened up and became real sore."

¶ 3. On April 12, Erickson was examined at the Quad/Med Clinic and diagnosed with a thoracic strain. He was referred to rehabilitation, prescribed medication, and released to return to work on April 13 with temporary restrictions on lifting, twisting, squatting, and crouching. Between April 12 and June 28, 2000, several medical professionals evaluated Erickson and each released him to work with temporary restrictions.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

During this time, Quad permitted Erickson to perform tasks consistent with the work restrictions.

¶ 4. On July 19, 2000, an independent medical examiner concluded that Erickson could work without restrictions. Quad's workers' compensation coordinator, Mary Wolfe, advised Erickson that he would have to return to his normal duties or take a medical leave without pay. Erickson decided to perform his normal work, although he continued to experience pain, tightness, and inflammation in his back.

¶ 5. Erickson submitted a report prepared by Dr. Charles Shoham on March 13, 2001, wherein Dr. Shoham opined that Erickson suffered from back myofascial pain, a permanent condition requiring permanent work restrictions. The restrictions imposed by Dr. Shoham were as follows: no lifting more than forty pounds, no carrying more than forty pounds, no repetitive pushing or pulling, and no repetitive bending, twisting or lifting.

¶ 6. On March 19, Wolfe, Erickson, and Erickson's direct supervisor, Dave Litschauer, met to discuss Dr. Shoham's report and the potential impact on Erickson's ability to perform his janitorial duties. The discussion revealed that Erickson's work restrictions made it too difficult for him to perform his job duties. Wolfe then explained that Erickson had some options, including: (1) continue working as a janitor without restrictions, (2) take an unpaid medical leave, or (3) transfer to another job at Quad that was consistent with his work restrictions.

¶ 7. Erickson claims, but Quad denies, that Quad "suspended" him from his job. Quad claims that it referred Erickson to its internal career assistance department, which assists employees with job issues and job changes. Erickson agrees that he was offered career

assistance, but concedes he did not call to follow up on the service for the next six months. It is undisputed that Erickson has not returned to work at Quad since March 19, 2001.

¶ 8. On July 11, 2001, Erickson filed a WFEA disability discrimination complaint with the Equal Rights Division of the Department of Workforce Development. He alleged that Quad discriminated against him by terminating his employment because of a disability and refusing to reasonably accommodate a disability. In an initial determination, an investigator for the Division concluded that there was probable cause to believe Quad had violated the WFEA. The case was certified for a hearing.

¶ 9. The hearing took place on April 1 and 2, 2003. Based on the evidence received, the hearing examiner made several findings of fact, including that: (1) Erickson did not have a physical impairment which made achievement unusually difficult or which limited his capacity to work, and (2) Quad did not have a record of Erickson having, or perceive Erickson as having, such a physical impairment. The examiner concluded that Erickson "failed to establish by a fair preponderance of the evidence that he had a disability within the meaning of the Wisconsin Fair Employment Act." Erickson's complaint was dismissed.

¶ 10. On May 25, 2003, LIRC issued a Fair Employment Decision affirming the hearing examiner's dismissal of Erickson's complaint. LIRC's memorandum opinion provided:

> The fact that the complainant was injured at work and suffers from back pain does not warrant a conclusion that he has a disability, absent any evidence as to the nature and extent of the impairment. Moreover, no

evidence was presented regarding the permanency of the condition, and the commission is unable to make any conclusions as to whether the complainant's back problem was a permanent condition or a temporary one which could be expected to heal over time. The commission has consistently held that disabilities which are merely temporary do not fall within what is intended to be covered by the Act's prohibition on discrimination because of disability.

Erickson appealed to the Washington County Circuit Court, which affirmed LIRC in a written opinion dated October 27, 2004, and a judgment entered on November 12. Erickson appeals.

## DISCUSSION

¶ 11. Erickson first contends that LIRC and the circuit court erred when determining that to be actionable under the WFEA, a disability must be permanent. Specifically, Erickson states that LIRC's "holding that a physical impairment must be permanent to be a disability under WFEA is clearly contrary to the legislative intent of WFEA." The relevant statute states: " 'Individual with a disability' means an individual who: (a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work; (b) Has a record of such an impairment; or (c) Is perceived as having such an impairment." Wis. Stat. § 111.32(8). Erickson points out that the statute does not contain a reference to permanency and argues that LIRC's interpretation adds an improper restriction to the language adopted by the legislature.

¶ 12. Erickson also contends that he presented sufficient evidence to show the nature of his claimed disability and any holding to the contrary is error. He

212

maintains that he presented undisputed evidence of a back injury that prevented him from "performing . . . the normal functions of twisting, pulling, pushing, bending, and lifting repetitively and limits his capacity to perform all his job responsibilities and which also requires him to remain under a physician's care and to take prescription drugs to alleviate pain." He contends that pursuant to our supreme court's holding in *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. DILHR*, 62 Wis. 2d 392, 398, 215 N.W.2d 443 (1974), a disability must be interpreted not as a technical term of art, but according to common and approved usage. Erickson further contends that he presented sufficient evidence that Quad perceived him as having a physical impairment that limited his capacity to work.

¶ 13. On appeal, we review the LIRC decision and not the judgment of the circuit court. *See Schwartz v. DOR*, 2002 WI App 255, ¶ 14, 258 Wis. 2d 112, 653 N.W.2d 150. Three standards of deference govern judicial review of agency conclusions of law and statutory interpretation: great weight, due weight, and de novo. *Wolter v. DOR*, 231 Wis. 2d 651, 655–56, 605 N.W.2d 283 (Ct. App. 1999). Great weight, the most deferential standard, applies when (1) the agency was charged by the legislature with the duty of administering the statute, (2) the agency's interpretation of the statute is long-standing, (3) the agency employed its expertise or specialized knowledge in forming the interpretation, and (4) the agency's interpretation provides uniformity and consistency in the application of the statute. *Id.*

¶ 14. Here, any decision made by LIRC will be given great weight deference due to the agency's knowledge and experience in the application of the WFEA.

*See Target Stores v. LIRC*, 217 Wis. 2d 1, 13, 576 N.W.2d 545 (Ct. App. 1998). Accordingly, we will sustain LIRC's decision unless it directly contravenes a statute, is clearly contrary to legislative intent, or lacks a rational basis. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661–62, 539 N.W.2d 98 (1995).

¶ 15. We turn first to Erickson's argument that LIRC improperly ruled that WIS. STAT. § 111.32(8) requires a permanent impairment. Erickson relies on *Target Stores* for support of his contention that a temporary disability is actionable under the WFEA. The analogy fails, however, because in *Target Stores* the parties stipulated to a disability. *Target Stores*, 217 Wis. 2d at 10. The sole issue we addressed there was whether "clemency and forbearance" would have been a reasonable accommodation of the employee's conceded disability. *Id.*

¶ 16. For over twenty years, LIRC has interpreted the term "disability" within the WFEA to require a permanent impairment.[2] Had our legislature considered this an inappropriate reading of the statute, it

---

[2] *See, e.g., Greco v. Snap-On Tools Corp.*, No. 200200350 (LIRC May 27, 2004) ("not every medical condition rises to the level of a disability"; temporary disability resulting from an injury was not a "disability"); *Falk v. WIPC LLC*, No. 200200400 (LIRC Dec. 18, 2003) ("back impairment due to slow recovery from surgery" was not a disability where medical evidence indicated it was a temporary condition); *Reinke v. Pick 'n Save Mega Food Ctrs.*, No. 199703205 (LIRC Jan. 28, 2000) (disabilities which are merely temporary do not fall within what was intended to be covered by the WFEA's prohibition against disability discrimination); *Pizl v. Waukesha Bearings Corp.*, No. 8102557 (LIRC Mar. 9, 1983) (temporary disability sustained while on the job was not considered a handicap); *Terrell v. Pabst*

could have revised the language to include temporary impairments. We will not impose a new interpretation where our legislature has seen fit to let the statutory language, as applied by LIRC, stand. *Cf. A.B.C.G. Enters., Inc. v. First Bank Southeast, N.A.*, 178 Wis. 2d 370, 376, 504 N.W.2d 382 (Ct. App. 1993) (where a statute is re-enacted with no change in the pertinent language, a judicial interpretation of the prior statute is presumed to apply), *affd,* 184 Wis. 2d 465, 515 N.W.2d 904 (1994). We conclude that LIRC properly interpreted Wis. Stat. § 111.32(8) to require Erickson to demonstrate a permanent impairment.

¶ 17. Next, Erickson argues that he submitted sufficient proof to establish a disability under the WFEA. To prevail on his disability discrimination claim, Erickson must establish that he has a physical impairment as contemplated by the WFEA. A physical impairment is an "actual lessening, deterioration, or damage to a normal bodily function or bodily condition, including the absence of such function or condition." *City of La Crosse Police & Fire Comm'n v. LIRC*, 139 Wis. 2d 740, 760, 407 N.W.2d 510 (1987). Proof of a disability requires competent medical evidence of the employee's alleged impairment. *See Connecticut Gen. Life Ins. Co. v. DILHR*, 86 Wis. 2d 393, 407–08, 273 N.W.2d 206 (1979) (diagnosis of a disability, here alcoholism, requires expert medical opinion).

¶ 18. At his hearing, Erickson testified that he injured himself at work, his back muscles tightened up, he experienced muscle spasms, he had pain and inflammation, and certain movements caused him pain in his

*Brewing Co.*, No. 7606616 (LIRC Mar. 4, 1981) (short-term illness such as bronchitis was not considered a handicap).

back. He did not, however, offer any competent medical evidence of the nature, extent, or permanency of his back injury.[3] LIRC summed up the situation as follows:

> [Erickson] presented no medical evidence on his behalf, either in the form of physician testimony or competent medical records upon which a fact-finder could base a conclusion about the nature of his condition. While [Erickson] did present copies of work restrictions prepared by various physicians, it was stipulated at the hearing that these documents were submitted for the sole purpose of demonstrating what information was provided to [Quad] and when, and not as proof of the underlying medical opinions or diagnoses.

> [Erickson's] evidence is insufficient to establish that he has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work, within the meaning of the Act. The fact that [Erickson] was injured at work and suffers from back pain does not warrant a conclusion that he has a disability, absent any evidence as to the nature and extent of the impairment. Moreover, no evidence was presented regarding the permanency of the condition, and the commission is unable to make any conclusions as to whether [Erickson's] back problem was a permanent condition or a temporary one which could be expected to heal over time.

---

[3] During the course of the hearing, the examiner advised Erickson as follows:

> [W]here [Quad] is receiving different information regarding [Erickson's] condition, my understanding is I do not have the authority to make a finding of what his actual condition is without a doctor here. If either of you think that I do have such an authority, [then] you need to show how and where and in what manner I'm to resolve this without somebody here to testify.

¶ 19. Erickson relies on *Swanson v. State Street Stylists*, No. 199600028 (LIRC Nov. 26, 1997), for the proposition that a layperson's testimony can establish a disability. While there was no expert testimony in *Swanson,* the issue was not whether the layperson's testimony was sufficient, but rather whether the employee had a record of a disability. *See id.* Again, Erickson's attempt to draw a persuasive analogy fails. To demonstrate that a disability under the WFEA exists, the complainant must present "competent evidence of a medical diagnosis" regarding the alleged impairment. *See Connecticut Gen. Life,* 86 Wis. 2d at 407–08.

¶ 20. In the alternative, Erickson claims that he is an individual with a disability under Wis. Stat. § 111.32(8)(c) because Quad perceived him as having a physical impairment. Erickson must show that Quad determined that he had an impairment that made achievement unusually difficult or limited his capacity to work, and discriminated against him on that basis. *See City of La Crosse Police & Fire Comm'n,* 139 Wis. 2d at 762, 766 (a person alleging discrimination based on a disability under the WFEA must establish an actual or perceived impairment, that such condition either actually makes or is perceived as making achievement unusually difficult or limits the capacity to work, and that the employee was discriminated against on the basis of that actual or perceived disability).

¶ 21. Quad contends that it believed Erickson "never had anything more than a temporary condition based upon competent medical records received from [the independent medical examiner]." Erickson's super-

217

visor, Litschauer, testified that he had "multiple doctors thrown at me trying to manage a guy that says he's still hurt." In the face of conflicting medical reports, Quad continued to accommodate Erickson's requests for light-duty work. This was done despite the independent medical report indicating that Erickson had no permanent impairment. By so doing, Quad supported Erickson's efforts to continue working and ultimately upheld the purpose of the WFEA, that is, to enable individuals to work. *See* WIS. STAT. § 111.31(2); *Brown County v. LIRC*, 124 Wis. 2d 560, 563, 369 N.W.2d 735 (1985). We would undermine the purpose of the WFEA were we to conclude that Quad's decision to grant Erickson's requests for light-duty work, rather than terminating his employment for refusing to perform his regular job duties, was proof of a perceived disability under WIS. STAT. § 111.32(8)(c).

¶ 22. The hearing examiner concluded that Erickson did not establish a perceived disability because:

> (1) he failed to establish what his condition actually was, (2) he failed to establish that anyone at Quad Graphics formed a conclusion regarding what his condition actually was, and (3) the only clear evidence about an agent for Quad Graphics forming an opinion regarding Mr. Erickson's condition is the credible evidence that both [Wolfe and Litschauer] concluded after receiving [the independent medical examiner's] report that Mr. Erickson did not have a permanent partial disability as that is defined by the Workers Compensation Law.

We agree. Erickson failed to establish that Quad perceived him as having an impairment that made achievement unusually difficult or limited his capacity to work

and then discriminated against him on that basis. *See City of La Crosse Police & Fire Comm'n*, 139 Wis. 2d at 762, 766.

## CONCLUSION

¶ 23. We conclude that Erickson has failed to meet his burden of proof. He produced no competent medical evidence as to the nature, extent, and permanency of his back injury. Further, he failed to establish that Quad perceived him as disabled as that term is defined in WIS. STAT. § 111.32(8). LIRC's decision is consistent with the statute and underlying legislative intent, and it provides a rational basis for the result. Accordingly, we affirm the judgment of the circuit court, which upheld LIRC's decision. *See Harnischfeger Corp.*, 196 Wis. 2d at 662.

*By the Court.*—Judgment affirmed.