STOUGHTON TRAILERS, INC.,
Petitioner-Appellant-Petitioner,

v.

LABOR AND INDUSTRY REVIEW COMMISSION
and Douglas Scott Geen,
Respondents-Respondents.

Supreme Court

*No. 2004AP1550. Oral argument March 7, 2007.
—Decided July 17, 2007.*

2007 WI 105

(Also reported in 735 N.W.2d 477.)

515

For the petitioner-appellant-petitioner there were briefs by *Amy O. Bruchs, Scott C. Baumbach,* and *Michael Best & Friedrich LLP,* Madison, and oral argument by *Amy O. Bruchs.*

For the respondents-respondents Labor and Industry Review Commission, there were briefs by *David C. Rice,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* and oral argument by *David C. Rice.*

For the respondents-respondents Douglas Scott Geen, there were briefs by *Victor M. Arellano, John C. Carlson, Jr., Matthew P. White,* and *Lawton & Cates, S.C.,* Madison, and oral argument by *John C. Carlson, Jr.*

An amicus curiae brief was filed by *Monica Murphy,* Milwaukee, on behalf of the Disability Rights of Wisconsin.

An amicus curiae brief was filed by *Laura A. Linder, C. Ann Martin,* and *Lindner & Marsack, S.C.,* Milwaukee, on behalf of the Wisconsin Manufacturers & Commerce, Inc., there was oral argument by *Laura Lindner.*

An amicus curiae brief was filed by *Melissa A. Cherney,* Madison, on behalf of the Wisconsin Education Association Council.

¶ 1. LOUIS B. BUTLER, JR., J. Stoughton Trailers, Inc. ("Stoughton") seeks review of a published decision of the court of appeals[1] affirming a decision of the Labor and Industry Review Commission ("LIRC"), which concluded that Stoughton refused to reasonably accommodate Douglas Scott Geen's ("Geen") disability, migraine headaches, within the meaning of Wis. Stat. § 111.34(1)(b) (2005–06),[2] and terminated Geen because of his disability within the meaning of Wis. Stat. §§ 111.322 and 111.34.

¶ 2. This case involves interpretation of the Wisconsin Fair Employment Act ("WFEA") and review of an agency determination. Thus, our authority in this case is governed by: (1) the will of the legislature as expressed in the language of the WFEA, and (2) the appropriate level of deference accorded to a determination of the agency charged by the legislature with administrating the WFEA.

¶ 3. Stoughton terminated Geen's employment after it determined that he accumulated 6.5 absences or "occurrences" under Stoughton's no-fault attendance policy, exceeding the policy's limit of six "occurrences" in a prescribed time period. Two of these "occurrences"

---

[1] *Stoughton Trailers, Inc. v. LIRC,* 2006 WI App 157, 295 Wis. 2d 750, 721 N.W.2d 102.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

were caused by Geen's migraine headaches, while the remaining "occurrences" were unrelated to Geen's disability.

¶ 4. LIRC concluded that Stoughton terminated Geen because of his disability within the meaning of the WFEA, holding that the two "occurrences" caused by Geen's disability were sufficient to conclude that the termination was because of disability. LIRC further concluded that Stoughton did not reasonably accommodate Geen, in that it failed to give him sufficient time to submit documentation to avoid being assessed an "occurrence" under its attendance policy, and it failed to exercise "clemency and forbearance" when it refused to temporarily tolerate the absences that were caused by his disability to allow medical intervention to take its course and potentially resolve the problem of Geen's absences. The circuit court and court of appeals affirmed LIRC on both issues.

¶ 5. We conclude a more reasonable basis for LIRC's decision exists than the one adopted by LIRC. To wit, we note that Stoughton did not follow its own no-fault attendance policy in terminating Geen when it failed to provide him with 15 days as allowed under the policy to submit documentation to avoid being assessed an "occurrence." Because Stoughton did not follow its own no-fault attendance policy, it may not claim whatever protection that policy may provide in its termination of Geen. Thus, LIRC's conclusion that Geen was terminated because of his disability is more reasonably based on the unique circumstances surrounding that termination. Based on these circumstances, we conclude that LIRC's determination that Stoughton terminated Geen because of his disability was reasonable. We therefore do not address the issue of whether a termination for exceeding the maximum number of absences

permitted under a no-fault attendance policy is because of disability under the WFEA when some of the absences were caused by disability and others were not.[3]

¶ 6. We further conclude that LIRC reasonably interpreted and applied the WFEA in determining that Stoughton failed to reasonably accommodate Geen. Additionally, we conclude that its ordered remedy was reasonable. Accordingly, we affirm.

I

¶ 7. The facts relevant to the issues presented on review are taken from LIRC's decision of September 12, 2003, and are undisputed. Stoughton, a manufacturer of semi-trailers, has a no-fault attendance policy for its employees. The policy includes a point-based system under which employees are assigned "occurrences" for tardiness and absences, subject to limited exceptions, including "[a]bsences meeting State and Federal Family and Medical Leave [FMLA] laws." An employee is terminated under the policy if he or she accumulates six "occurrences."

---

[3] The dissent chides this court for "abdicat[ing] its role as the state's ultimate policy making court," and later for "adding insult to injury" by deciding this case on the grounds that are presented by the facts. Dissent, ¶¶ 76, 78. In essence, the dissent faults this court for exercising judicial restraint.

In general, this court decides cases on the narrowest grounds presented. *See Barland v. Eau Claire County,* 216 Wis. 2d 560, 566 n.2, 575 N.W.2d 671 (1998). We do not reach out to decide issues not presented by the facts just because we can. We settle disputes. Here, the facts present a narrower ground for decision than the broad ground upon which the dissent so eagerly wishes us to base our decision.

We fail to see how this well accepted approach "add[s] insult to injury." Dissent, ¶ 78. Insult to whom? Injury to whom? We have merely resolved this dispute between Geen and Stoughton.

¶ 8. Under Stoughton's no-fault attendance policy, an employee who is absent from work due to a medical condition is provided a standard letter with a Family and Medical Leave Act ("FMLA") form to complete and return to the human resources department. If the employee returns the completed form, he or she will not be assessed an "occurrence." However, if the employee does not return the certification form within 15 days (but does submit other proof that their absence was for a medical condition), the employee is assessed one "occurrence," regardless of the duration of the leave. In this case, Geen submitted a medical excuse for a mid-December 1996 to early January 1997 extended absence but not the FMLA form and thus was assessed one "occurrence."

¶ 9. Geen worked for Stoughton for approximately eight years, until January 31, 1997, when he was fired for exceeding the number of "occurrences" allowed under the attendance policy.

¶ 10. As of December 11, 1996, Geen had accumulated 4.5 "occurrences" under the policy, none of which were due to disability. From December 12, 1996, through January 7, 1997, Geen was absent from work because of severe headaches. Geen sought medical attention at least three times during this period and was diagnosed as suffering from migraine headaches and depression. Geen was prescribed the drug Paxil for his depression and Midrin for his migraines. This leave of absence constituted Geen's first disability-related "occurrence" under the attendance policy, bringing his total to 5.5 "occurrences."

¶ 11. Geen returned to work on January 8, 1997. On Friday, January 24, 1997, Geen called in before his shift and said that he could not work because he had a migraine. Geen called in sick again with migraines on

the following Monday and Tuesday mornings, January 27 and 28. When Geen returned to work on January 29, 1997, Stoughton's human resource administrator, Tammy Droessler ("Droessler"), provided Geen with a copy of a standard letter noting that Geen had been absent from work since the previous Friday. The letter explained the need to submit a completed FMLA form within 15 days of the date of the letter if Geen was to avoid having the absence counted as an "occurrence" under Stoughton's no-fault attendance policy.[4] Droessler also reminded Geen orally that he would need to submit the FMLA form to avoid being assessed an "occurrence."

¶ 12. On January 30, 1997, Geen was examined by his physician, Dr. M.A. Hansen, who concluded that Geen showed "textbook examples of migraine headaches, which has increased in frequency and intensity since beginning a prescription of Paxil." Dr. Hansen took Geen off Paxil and again prescribed Midrin for his headaches. Dr. Hansen scheduled a follow-up exam for Geen in one week. Dr. Hansen provided Geen with a note stating that he was being evaluated for migraines. Later that day, Geen gave the note to Droessler, who told Geen that he needed to bring in a doctor's note stating he could return to work without restrictions.

¶ 13. The next day, January 31, 1997, Geen gave Droessler a second note from Dr. Hansen indicating he had been unable to work on January 27 and 28 because of migraines but was now cleared to work without restrictions. The note did not address Geen's absence on

---

[4] Fifteen days is the minimum time the FMLA requires employers to give employees to submit medical certification. *See* 29 C.F.R. § 825.305(b). Stoughton incorporated this requirement of the FMLA in its no-fault attendance policy. The FMLA itself is not at issue in this case. *See infra,* ¶ 58 n.12.

January 24. After reviewing the note, Droessler informed Geen he was being discharged because the doctor's note did not excuse him for January 24, causing him to accrue an "occurrence" for that date, which brought his total number of "occurrences" to 6.5. Geen was given two days from the date he received the standard letter (January 29) to the date of his termination (January 31) and not 15 days as provided under Stoughton's no-fault termination policy to submit the FMLA form to avoid being assessed an "occurrence."

¶ 14. Geen indicated that his doctor needed more time to evaluate him, and that his doctor would be unavailable to provide additional medical documentation for at least a week. Droessler told Geen that he had three working days from Friday, January 31, to write a letter to the company's Attendance Review Board ("Board") in order to try to reverse the assessment of the "occurrence." She said that he could submit additional medical documentation to the Board.[5]

---

[5] The hearing examiner's decision in this case contains additional findings of fact that are not included in LIRC's decision but are not inconsistent with LIRC's decision. *See Geen v. Stoughton Trailers,* ERD No. 199700618 (ERD, September 29, 1999). These included that Droessler knew of two ways that Geen could have avoided the assessment of an "occurrence" and kept his job. *Id.,* p. 4. First, Geen could have demonstrated that his January 24, 27 and 28 absences qualified for family and medical leave by submitting a completed FMLA form, the option discussed at length in LIRC's decision and in this opinion. *Id.* Second, Stoughton could have compared the reasons for Geen's previous medical leave of absence from December 1996 to early January 1997 to the reasons for his January 24, 27 and 28 absences and assessed him only one "occurrence" for these two periods of absence. *Id.* According to the hearing examiner's decision, Droessler did not consider combining the periods of absence into a single "occurrence," and rather chose

¶ 15. By letter dated February 4, 1997, Geen timely appealed his termination to the Board. Geen indicated his doctor was currently evaluating his headaches and had indicated that he would perform additional tests and change Geen's medication if the headaches persisted. Geen did not submit any additional medical documentation with his letter. On February 21, 1997, the Board rejected Geen's appeal.

¶ 16. On February 24, 1997, Geen filed a disability discrimination complaint with the Equal Rights Division of the Department of Workforce Development ("DWD") alleging Stoughton terminated his employment because of his disability in violation of the WFEA. A hearing examiner[6] ruled that (1) Geen had a disability as defined by the WFEA; (2) his employment was terminated in part because of his disability; and (3) Stoughton had failed to reasonably accommodate Geen's disability.

¶ 17. Stoughton appealed to LIRC. LIRC reversed, concluding that Stoughton had not refused to reasonably accommodate Geen's disability. *Geen v. Stoughton Trailers, Inc.*, ERD Case No. 199700618 (LIRC, August 31, 2000). LIRC dismissed Geen's complaint.

¶ 18. Geen appealed to the Dane County Circuit Court, Honorable John C. Albert, which set aside

to terminate Geen's employment only two days into the 15–day period for submission of the FMLA documentation. *Id.*

The hearing examiner's decision also indicates that Geen did not submit any additional medical documentation to the Attendance Review Board, although Geen had a follow-up exam with his doctor on February 7, 1997. *Id.,* p. 5.

[6] The WFEA refers to persons who hear and decide WFEA complaints as "examiners" and not "administrative law judges." *See* Wis. Stat. § 111.39(4). This opinion therefore uses the term "examiner."

LIRC's order dismissing the complaint and ordered the matter remanded to LIRC. Stoughton sought review of the circuit court decision with the court of appeals.

¶ 19. The court of appeals concluded that while LIRC had determined that Stoughton did not *discriminate* against Geen because of disability, it expressly left open the more narrow question of whether Geen was *terminated* because of his disability. *See Geen v. LIRC*, 2002 WI App 269, ¶ 34 n.8, 258 Wis. 2d 498, 654 N.W.2d 1. The court of appeals noted that LIRC's decision discussed whether a termination could be because of disability when two of the 6.5 "occurrences" were due to disability, but concluded only " 'there is no bright-line rule' regarding when a 'no-fault' attendance policy becomes discriminatory on account of disability-related absences." *Geen*, 258 Wis. 2d 498, ¶ 34 n.8 (quoting *Geen*, ERD Case No. 199700618 (LIRC, August 31, 2000)). The court of appeals also concluded LIRC should have considered the applicability of the Family and Medical Leave Act ("FMLA") to Geen's case. The court of appeals remanded the matter to LIRC to

> consider, to the extent it is necessary to do so, either or both of the following issues: (1) whether on the present facts Stoughton terminated Geen's employment because of his disability; and (2) whether the FMLA or regulations enacted thereunder affect Stoughton's claim that it reasonably accommodated Geen's disability, and if so, how.

*Geen*, 258 Wis. 2d 498, ¶ 36. Stoughton filed a petition for review, which the Supreme Court denied on January 21, 2003.

¶ 20. On remand, LIRC concluded Stoughton terminated Geen because of his disability and failed to reasonably accommodate his disability. *Geen v. Stoughton Trailers, Inc.*, ERD Case No. 199700618

(LIRC, September 12, 2003). LIRC's decision included a cease and desist order, reinstatement of Geen, and an award of back pay and attorneys fees and costs.

¶ 21. Stoughton appealed to the Dane County Circuit Court, Honorable Michael N. Nowakowski, which affirmed the LIRC decision. Stoughton sought review in the court of appeals, which affirmed the circuit court's order. The court of appeals concluded LIRC's determination that Stoughton terminated Geen's employment because of his disability was based on a reasonable interpretation of the relevant provisions of the WFEA and that Stoughton's interpretation of the statute was not more reasonable. *Stoughton Trailers, Inc. v. LIRC*, 2006 WI App 157, ¶ 24, 295 Wis. 2d 750, 721 N.W.2d 102. The court of appeals also concluded that LIRC reasonably interpreted and applied the WFEA in determining that Stoughton failed to reasonably accommodate Geen's disability. *Id.*, ¶ 47. Further, the court of appeals concluded that LIRC properly exercised its discretion in applying the "in-part" test adopted in *Hoell v. LIRC*, 186 Wis. 2d 603, 609–11, 522 N.W.2d 234 (Ct. App. 1994), to establish Geen's remedy. *Stoughton Trailers*, 295 Wis. 2d 750, ¶ 35. Stoughton filed a petition for review, which we granted.

II

¶ 22. The Wisconsin Fair Employment Act ("WFEA"), Wis. Stat. §§ 111.31–111.395, prohibits discrimination in employment on the basis of age, race, creed, color, disability, marital status, sex, national origin, ancestry, arrest record, conviction record, membership in the national guard, state defense force or military reserves, or the use or nonuse of lawful products off the employer's premises on the employee's

personal time. Wis. Stat. § 111.321. The WFEA states that its purpose is "to encourage and foster to the fullest extent practicable the employment of all properly qualified individuals" regardless of their status as a member of a class protected by the statute, and that its provisions "shall be liberally construed for the accomplishment of this purpose." Wis. Stat. § 111.31(3).

¶ 23. Wisconsin Stat. § 111.34(1)(b) provides that "[e]mployment discrimination because of disability includes, but is not limited to . . . [r]efusing to reasonably accommodate an employee's or prospective employee's disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise or business."[7] As the court of appeals noted, to prevail on his disability discrimination claim under the WFEA, Geen must first

> establish that he has a disability within the meaning of Wisconsin's fair employment law. Second, Geen must prove that Stoughton terminated him because of his disability. Third, if Geen proves these two elements, the burden then shifts to Stoughton to justify the termination. Stoughton may do so by proving that Geen's disability is "reasonably related" to his ability to do his

---

[7] The dissent asserts that because the court concludes that Stoughton violated its no-fault policy by not giving Geen 15 days to submit medical documentation before it assessed an occurrence against him, it "leaps to the determination . . . that . . . Stoughton *intentionally* discriminated against Geen when it terminated him." Dissent, ¶ 93. The dissent ignores the statutory definition of employment discrimination, which includes "[r]efusing to reasonably accommodate an employee's or prospective employee's disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise or business." Wis. Stat. § 111.34(1)(b).

job *and* that either: (1) Stoughton reasonably accommodated Geen's disability prior to his termination; or (2) any accommodation would have posed a hardship on its business.

*Stoughton Trailers,* 295 Wis. 2d 750, ¶ 13 (quoting *Geen,* 258 Wis. 2d 498, ¶ 15 (citations omitted) (emphasis in original)).

¶ 24. Stoughton does not dispute that migraine headaches are a disability within the meaning of the WFEA. Geen has not argued that his migraine headaches are not "reasonably related" to his ability to do his job. Moreover, Stoughton does not assert that a reasonable accommodation of Geen's disability would pose a hardship on its business. The two primary disputed issues in this case are whether Stoughton terminated Geen because of his disability, and whether Stoughton took adequate steps to reasonably accommodate Geen's disability prior to terminating him. We address each of these issues in turn.

A

¶ 25. Stoughton contends that, prior to LIRC's second decision in this case, the settled rule in Wisconsin was that it is not discrimination because of disability for an employer to terminate an employee by even-handed application of the employer's no-fault attendance policy when a majority of the employee's absences causing termination were not related to the employee's disability. Stoughton further maintains LIRC erred in applying the "in-part" test used in *Hoell,* 186 Wis. 2d at 608, because the "in-part" test is appropriate only in cases in which discriminatory intent is a motivating factor in the decision to terminate, and intent (discriminatory or otherwise) is not a factor in a

termination that is based on a violation of a no-fault attendance policy. Alternately, Stoughton asserts that if the "in-part" test does apply here, LIRC nonetheless ordered the wrong remedy. Before addressing these arguments, we consider the appropriate standard of review to apply to LIRC's determination that Geen was terminated because of his disability.

1

¶ 26. When reviewing a decision of an administrative agency, this court reviews the agency's decision, not the decision of the court of appeals or the circuit court. *Racine Harley-Davidson, Inc. v. Div. of Hearings and Appeals*, 2006 WI 86, ¶ 8 n.4, 292 Wis. 2d 549, 717 N.W.2d 184. A reviewing court accords an interpretation of a statute by an administrative agency one of three levels of deference—great weight, due weight or no deference—based on the agency's expertise in the area of law at issue. *See DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 15, 299 Wis. 2d 1, 727 N.W.2d 311.

¶ 27. An agency's interpretation of a statute is entitled to great weight deference when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute. *DaimlerChrysler*, 299 Wis. 2d 1, ¶ 16.

¶ 28. We grant an intermediate level of deference, due weight, "where an agency has some experience in the area, but has not developed any particular expertise

in interpreting and applying the statute at hand" that would put the agency in a better position to interpret the statute than a reviewing court. *Responsible Use of Rural and Agric. Land (RURAL) v. Pub. Serv. Comm'n of Wis.*, 2000 WI 129, ¶ 24, 239 Wis. 2d 660, 619 N.W.2d 888.

> The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question. [Under the due weight standard] . . . , a court will not overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available.

*Id.* (quoting *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 286–87, 548 N.W.2d 57 (1996)).

¶ 29. We apply de novo review when "there is no evidence that the agency has any special expertise or experience interpreting the statute[,] . . . the issue before the agency is clearly one of first impression, or . . . the agency's position on an issue has been so inconsistent so as to provide no real guidance." *Brauneis v. LIRC*, 2000 WI 69, ¶ 18, 236 Wis. 2d 27, 612 N.W.2d 635 (citations omitted).

¶ 30. Stoughton contends that we should apply de novo review because LIRC's decision was based on an interpretation of the disability provisions of the WFEA that was inconsistent with its first decision in this case and with prior cases that addressed the application of no-fault attendance policies to disabled employees. Geen contends that LIRC's decision is entitled to great weight deference, given the agency's experience and knowledge in application of the WFEA.

¶ 31. The court of appeals and the circuit court both concluded that LIRC's "because of" disability decision was entitled to due weight deference. The court of appeals reasoned that "because the question presented here involves policy implications, and because LIRC offers expertise and experience in the interpretation of the WFEA's 'because of disability' language," some deference was owed LIRC's decision. *Stoughton Trailers,* 295 Wis. 2d 750, ¶ 21. However, due to the "somewhat different approach" LIRC had taken than in prior cases addressing somewhat similar issues, the court of appeals determined that LIRC's decision was entitled to due weight rather than great weight deference. *Id.*

¶ 32. We agree with the court of appeals that LIRC's "because of" disability decision is entitled to due weight deference. LIRC has not squarely addressed in any prior decision the question of whether a termination for exceeding the maximum number of permitted absences under a no-fault attendance policy was a termination because of disability within the meaning of the WFEA when some of the employee's absences were caused by disability and others were not. Because LIRC has acquired much experience interpreting "because of" disability language in the WFEA, *see, e.g., Wal-Mart Stores, Inc. v. LIRC,* 2000 WI App 272, 240 Wis. 2d 209, 621 N.W.2d 633, is well acquainted with the policies that underlie the disability protections of the WFEA, but has not previously addressed the particular issue presented in this case, we grant LIRC's decision on the termination "because of" disability question due weight deference. Accordingly, we will affirm LIRC's decision if it is reasonable, and no other interpretation is more reasonable. *See RURAL,* 239 Wis. 2d 660, ¶ 24.

¶ 33. We begin our consideration of the "because of" disability issue by briefly setting forth LIRC's analysis. On remand before LIRC, Stoughton argued that LIRC's first decision had concluded that Geen was not terminated because of his disability, contrary to the court of appeals' reading of LIRC's first decision as explained in *Geen*, 258 Wis. 2d 498. Stoughton also maintained that LIRC's prior decisions in *Gordon v. Good Samaritan Medical Center*, ERD Case No. 8551631 (LIRC, April 26, 1988), and *Gee v. ASAA Tech.*, ERD Case No. 8901783 (LIRC, January 15, 1993), established that a termination for exceeding the maximum number of permitted absences under a no-fault attendance policy was not because of disability under the WFEA when only some of the absences were caused by a disability.

¶ 34. LIRC rejected Stoughton's argument that its first decision had held that the termination was because of disability, noting that its first decision was based on the conclusion that Stoughton had reasonably accommodated Geen, and had expressly reserved judgment on the question of whether Geen's termination was because of his disability. LIRC noted that the question of whether Geen was terminated because of disability was narrower than the ultimate question of whether Geen was discriminated against because of his disability. LIRC further noted that, regardless, it was bound by the court of appeals' conclusion in *Geen* regarding the "because of" disability question under the law of the case doctrine.[8]

---

[8] "The law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent

¶ 35. LIRC concluded that its prior decisions in *Gordon* and *Gee* did not compel the result sought by Stoughton because neither squarely addressed the issue presented in this case. LIRC noted that while *Gordon* and *Gee* contained discussion of the relationship between no-fault attendance policies and disability discrimination claims under the WFEA, the discussion in both cases was unrelated to the holding, and therefore dicta. LIRC added that, to the extent that these two decisions suggested a different analysis, "the current commission simply takes a different view of this matter than did the commission which decided *Gordon* and *Gee* a decade and more ago." *Geen v. Stoughton Trailers, Inc.,* ERD Case No. 199700618 at p. 12 (LIRC, September 12, 2003).

¶ 36. LIRC then concluded that because two of Geen's 6.5 "occurrences" under the Stoughton's no-fault attendance policy were caused by his disability, the termination was because of his disability. LIRC concluded that the "in-part" test (or "mixed-motive" test) for discrimination endorsed by the court of appeals in *Hoell,* 186 Wis. 2d at 609–11, was applicable in the present case. Quoting *Hoell,* 186 Wis. 2d at 609–10, LIRC set forth the "in-part" test and the remedies available under it as follows:

> [I]f an employe[e] is terminated solely because of an impermissible motivating factor, the employe[e] normally should be awarded a cease and desist order, reinstatement, back pay, interest, and attorney's fees under the Wisconsin Fair Employment Act. If an em-

proceedings in the trial court or on later appeal.' " *State v. Stuart,* 2003 WI 73, ¶ 23, 262 Wis. 2d 620, 664 N.W.2d 82 (citation omitted). Accordingly, the tribunal to which a case is remanded must follow the decisions of the court of appeals or supreme court in that case. *Id.*

ploye[e] is terminated in part because of an impermissible motivating factor and in part because of other motivating factors, but the termination would *not* have occurred in the absence of the impermissible motivating factor, the Commission has the discretion to award some or all of the remedies ordinarily awarded. Finally, if an employe[e] is terminated in part because of an impermissible factor and in part because of other motivating factors, *and* the termination would have taken place in the absence of the impermissible motivating factor, the employe[e] should be awarded only a cease and desist order and attorney's fees.

*Id.* (emphasis in original).

¶ 37. Here, Stoughton renews its contention that the decision of LIRC that is on review conflicts with LIRC's first decision in this case, as well as its decisions in *Gordon* and *Gee*. In essence, Stoughton argues that these prior decisions compel the conclusion that an employer does not terminate an employee because of disability within the meaning of the WFEA if the termination is for violating a no-fault attendance policy when only some of the employee's absences were caused by the employee's disability.

¶ 38. Stoughton also contends LIRC erred in applying the "in-part" test of discrimination set forth in *Hoell*, 186 Wis. 2d at 609–11, to this case. It asserts that the "in-part" test applies only to cases involving discriminatory intent, and that a termination by application of a no-fault attendance policy is by definition non-discriminatory. Stoughton maintains that the proper test of discrimination in this case is the "determining factor" test, an alternate methodology for cases involving a mixture of legitimate and illegitimate reasons. Under this test, the analysis focuses on whether the complainant's disability was merely a "factor" in the

termination and therefore not because of disability, or whether it was a "determining factor" and therefore because of disability. *See Puetz Motor Sales v. LIRC,* 126 Wis. 2d 168, 172–73, 376 N.W.2d 372 (Ct. App. 1985).

¶ 39. LIRC contends that it properly concluded that Geen was terminated because of disability where Stoughton counted two disability-related absences as "occurrences" under its no-fault attendance policy. LIRC acknowledges that there may be circumstances in which the number of absences under a no-fault attendance policy may be so insignificant that the termination may not be because of disability. It argues that this is not such a case, however, because nearly one-third of Geen's "occurrences" under Stoughton's policy were caused by his disability. LIRC and Geen both contend that LIRC correctly applied the "in-part" test of discrimination in *Hoell* to the present case.

¶ 40. As noted, due weight deference requires that we affirm an agency's determination when no other interpretation is more reasonable. Our interpretation set forth below is more reasonable, but because it comports with LIRC's determination, we affirm. We conclude that our interpretation is more reasonable because it is appropriate to the unique facts of this case and disposes of the case on more narrow grounds, and we further conclude that Stoughton's position is not more reasonable. *See Barland v. Eau Claire County,* 216 Wis. 2d 560, 566 n.2, 575 N.W.2d 671 (1998) ("[W]e typically decide cases on the narrowest possible grounds.").

¶ 41. The relevant events relating to Geen's termination are as follows: Geen was absent from work on Friday, January 24, Monday, January 27, and Tuesday, January 28. When Geen returned to work on Wednesday, January 29, Droessler, Stoughton's human

resources administrator, informed Geen that he would need a release from his doctor to return to work. She also provided Geen with the form letter indicating that he would need to submit a completed FMLA form to ensure that his absences were not counted as an "occurrence." On January 30, Geen provided Droessler with a doctor's note indicating that Geen was being evaluated for migraines. The next day, January 31, Geen provided Droessler another doctor's note clearing him to return to work, and indicating that his absences on January 27 and 28 were due to migraine headaches.

¶ 42. That same day, Droessler assessed Geen an "occurrence" under Stoughton's attendance policy for not providing a medical excuse for his January 24 absence, bringing Geen's total "occurrences" to 6.5, and terminated Geen for exceeding the six allowed "occurrences" under the no-fault attendance policy. Droessler informed Geen that he could seek review of the termination with Stoughton's Attendance Review Board within three working days, and that Geen could present additional medical documentation to the Board. Geen informed Droessler that he would be unable to obtain additional documentation from his doctor for at least one week because a follow-up exam had been scheduled in one week to evaluate the progress of his treatment for migraines.

¶ 43. Based on these facts, we must conclude that Stoughton violated its own no-fault attendance policy in terminating Geen. Stoughton's policy allowed its employees 15 days from the date of receipt of the form letter to submit FMLA documentation to ensure that a medically-related absence would not be counted as an "occurrence" under its no-fault attendance policy. However, Stoughton gave Geen only two days from the date it provided Geen with the form letter to submit the

FMLA form to ensure that the absence was not counted as an "occurrence" before terminating him.[9] Under Stoughton's policy, Stoughton should have provided Geen until February 13 to submit FMLA documentation to avoid having his final absence count as an "occurrence" under the no-fault attendance policy. By not waiting the full 15 days, Stoughton terminated Geen when he had accrued only 5.5 "occurrences" under Stoughton's attendance policy, and the termination was therefore invalid under the policy.[10]

[9] We contrast Stoughton's treatment of the January 24 absence with its treatment of Geen's extended absence from December 1996 to early January 1997. After the extended absence, Stoughton provided Geen the required time to submit the completed FMLA form to avoid his absence being counted as an "occurrence," and Droessler personally encouraged Geen to submit the form. Geen failed to submit the FMLA form and the absence was counted as an "occurrence," bringing his total "occurrences" to 5.5. We note that Geen has not disputed the counting of this absence as an "occurrence," although it was undisputedly caused by his disability. At oral argument, counsel for LIRC plausibly suggested that Geen's decision not to challenge this earlier assessment of an "occurrence" may be related to the fact that Stoughton gave Geen ample time to submit the FMLA form, unlike in the case of the final absence.

[10] The dissent faults the court for making factual findings that were not made by the agency. The dissent is mistaken. Our decision differs from LIRC's because LIRC chose not to decide the case on the narrow grounds presented. Nevertheless, the facts on which the court relies were found by LIRC and the hearing examiner. The hearing examiner found that Droessler "chose to terminate Mr. Geen's employment only two days into the 15–day period for submission of the family/medical leave documentation." *Geen v. Stoughton Trailers,* ERD No. 199700618 at p. 4 (ERD, September 29, 1999). LIRC found that Stoughton had a 15–day period for employees to submit documentation to avoid being assessed an "occurrence," that Geen received a "standard letter" on January 29, 1997, informing him

¶ 44. Because Stoughton did not follow the requirements of its no-fault attendance policy in terminating Geen, we conclude it may not claim the protection that may be available to it under the policy. Geen had not accrued the requisite number of "occurrences" necessary for termination. Thus, LIRC's conclusion that Geen was terminated because of his disability is more reasonably based on the unique circumstances surrounding the termination of Geen than on LIRC's analysis of the relationship between Stoughton's no-fault attendance

he had 15 days from the receipt of the letter to submit FMLA documentation to avoid being assessed an occurrence under Stoughton's policy, and that Geen was terminated on January 31, 1997. *Geen v. Stoughton Trailers,* ERD No. 199700618 at pp. 4–6 (LIRC, September 12, 2003).

However, the dissent does not accept LIRC's finding that the date of Geen's termination was January 31, 1997. LIRC found that on January 31, 1997, "Droessler told Geen that he was being discharged because his medical documentation did not excuse him for Friday, January 24, 1997." *Geen,* ERD No. 199700618 at p. 6 (LIRC, September 12, 2003). Later, LIRC refers to the moment on January 31, 1997, that Droessler informed Geen he was being terminated as "the time [Droessler] discharged Geen." *Id.* Despite LIRC's explicit finding that Geen was terminated on January 31, 1997, the dissent faults the majority for "treat[ing] January 31 as the official discharge date" and asserts, without support, that "Stoughton's discharge of Geen became final on February 21, 1997," the date the Attendance Review Board rejected Geen's appeal of his termination, "more than 15 days after Stoughton advised Geen to submit medical documentation." Dissent, ¶ 96. The dissent suggests that this court "implies, without providing any justification, that Stoughton did not comply with the FMLA." *Id.* As we have taken pains to note, the FMLA itself is not at issue in this case. *See supra,* ¶ 11 n.4 and *infra,* ¶ 58 n.12. The FMLA's 15-day grace period to submit documentation is relevant to this case only to the extent that it was incorporated into Stoughton's no-fault attendance policy.

policy and the "because of" element of a disability discrimination claim under the WFEA.

¶ 45. We note that LIRC's findings of fact indicate that Stoughton knew Geen was receiving medical treatment for migraine headaches when it terminated him. LIRC's findings also show that Geen had recently been absent from work because of migraines, and that Geen had been absent for several weeks from December 1996 to January 1997 with migraines. Additionally, LIRC's findings show that Stoughton provided Geen only three days to obtain a medical excuse for his final absence, when Geen indicated his doctor would not be able to provide an excuse until the following week.

¶ 46. Based on these facts, we conclude that LIRC's conclusion that Stoughton terminated Geen "because of" his disability was reasonable.

¶ 47. Because we conclude that Stoughton violated its no-fault attendance policy in terminating Geen and therefore is not entitled to whatever protection the policy may provide, and that Geen had not accrued the requisite number of "occurrences" necessary for termination under that policy, we need not address whether a termination for exceeding the maximum number of absences allowed under a no-fault attendance policy is a termination because of disability when some of the absences were caused by a disability and others were not.

¶ 48. Stoughton argues that the application of the "in-part" test is inappropriate where an employer has a no-fault policy that is uniformly applied. Because Stoughton did not terminate Geen by proper application of its no-fault attendance policy, its argument for precluding the application of the "in-part" test must fail. We therefore determine that LIRC's application of the "in-part" test is reasonable under the facts of this case.

¶ 49. In sum, we conclude LIRC reasonably determined that Stoughton terminated Geen because of his disability. Based on LIRC's findings, we conclude Stoughton's termination of Geen violated its own no-fault attendance policy because Geen was not provided 15 days to submit documentation to avoid being assessed an "occurrence" under the policy. As a result, Geen had not accrued the requisite number of "occurrences" necessary for termination. Accordingly, we conclude that Stoughton is not entitled to whatever protection its no-fault policy may provide. We conclude that the circumstances surrounding Geen's termination demonstrate that LIRC's conclusion that Stoughton was terminated because of his disability was reasonable.[11]

B

¶ 50. Having affirmed LIRC's conclusion that Stoughton terminated Geen because of his disability, we turn to the issue of reasonable accommodation. Because Stoughton does not assert that accommodation of Geen's disability would pose a hardship on it, the only issue remaining for review is whether Stoughton reasonably accommodated Geen's disability.

---

[11] Stoughton and amicus Wisconsin Manufacturers and Commerce argued that an interpretation of the WFEA that determined that a termination for violating a no-fault attendance policy was because of disability when only some of an employee's absences were caused by disability would threaten the very existence of no-fault attendance policies. We express no opinion on this position of Stoughton and amicus. We merely reiterate that this opinion does not address the question of whether a termination is because of disability when an employee is terminated for violating a no-fault attendance policy when some of the employee's absences are disability-related and others are not.

¶ 51. We consider first the proper standard of review to apply to LIRC's interpretation and application of the WFEA's reasonable accommodation requirement. Stoughton contends that our review of this issue should be de novo because LIRC's decision regarding reasonable accommodation is contrary to its first decision in this case, and to its long-standing rule that employees do not have a right to the accommodation of their choosing. We conclude that LIRC's treatment of the reasonable accommodation issue is entitled to great weight deference.

¶ 52. This court addressed the standard of review generally applicable to reasonable accommodation determinations in *Crystal Lake Cheese Factory v. LIRC*, 2003 WI 106, 264 Wis. 2d 200, 664 N.W.2d 651, and *Hutchinson Technology, Inc. v. LIRC*, 2004 WI 90, 273 Wis. 2d 394, 682 N.W.2d 343. In *Crystal Lake*, this court, relying in part on the court of appeals' decision in *Target Stores v. LIRC*, 217 Wis. 2d 1, 13–14, 576 N.W.2d 545 (Ct. App. 1998), concluded that LIRC's interpretation and application of reasonable accommodation was entitled to great weight deference. *Crystal Lake*, 264 Wis. 2d 200, ¶¶ 29–30. The *Crystal Lake* court reasoned that great weight deference was appropriate because of the expertise LIRC had developed after having "had many opportunities to address th[e] issue" of reasonable accommodation under the WFEA. *Id.*

¶ 53. In the following term, this court applied great weight deference in another reasonable accommodation decision of LIRC, stating "[o]ur decision in *Crystal Lake* makes it clear that great weight deference is the appropriate standard of review for LIRC decisions

regarding reasonable accommodation . . . under the WFEA." *Hutchinson,* 273 Wis. 2d 394, ¶ 24 n.9. Following *Crystal Lake* and *Hutchinson,* we conclude LIRC's reasonable accommodation determination in this case is entitled to great weight deference. To the rationale explained in *Crystal Lake* and *Hutchinson,* we add only that the reasonableness of an accommodation necessarily depends upon the facts of a given case, and is the sort of determination for which LIRC, by virtue of its experience in applying the relevant legal principles to a range of different sets of facts, has developed expertise meriting great weight deference.

¶ 54. Stoughton cites no published case in which a Wisconsin court has applied de novo review to a reasonable accommodation decision of LIRC. Moreover, we disagree with Stoughton's arguments for applying de novo review in this case. Regarding the fact that LIRC reached a different conclusion here than in its first decision, we note that LIRC's second decision was influenced by the court of appeals' decision and order of remand. More importantly, and unlike LIRC's treatment of the "because of" question, LIRC applied the same legal standard for reasonable accommodation that it has applied in prior cases. Finally, for reasons discussed later, we disagree with Stoughton's argument that LIRC's decision violates the rule that an employee has no right to pick his or her own accommodation.

¶ 55. We therefore conclude that great weight deference is the proper standard of review here. Accordingly, "[w]e will uphold LIRC's interpretation of [the] statute, if it is reasonable and compatible with the plain meaning of the statute even if another interpretation may be more reasonable." *Hutchinson,* 273 Wis. 2d 394, ¶ 24.

¶ 56. In addressing the requirement of reasonable accommodation, this court has recognized "the important role that management prerogatives play in the success of a business." *Hutchinson,* 273 Wis. 2d 394, ¶ 29. As this court has explained, "a business must have the right to set its own employment rules to encourage maximum productivity," but "such rules do not exist in a vacuum, [and] must bend to the requirements of the WFEA." *Id.* To reasonably accommodate an employee with a disability under Wis. Stat. § 111.34(1)(b), an employer need only provide an accommodation that is reasonable under the circumstances, though it may not be the accommodation preferred by the employee. However, this court has also described "the WFEA [as] 'a remedial statute [that] should be broadly interpreted to resolve the problem it was designed to address,' " and has specifically applied this principle when interpreting the reasonable accommodation requirement of § 111.34(1)(b). *See Crystal Lake,* 264 Wis. 2d 200, ¶ 46 (citation omitted).

¶ 57. LIRC concluded on two separate bases that Stoughton failed to reasonably accommodate Geen's disability. First, LIRC concluded that Stoughton refused to reasonably accommodate Geen by failing to provide Geen with the 15 days required under its attendance policy to submit a completed FMLA form to excuse his final disability-related absence. Second, LIRC concluded that Stoughton refused to reasonably accommodate Geen by failing to extend to him "clemency and forbearance" by temporarily tolerating his disability-related absences while the medical intervention that had already begun was allowed to take its

course and eventually resolve the problem of his absences. We examine LIRC's analysis of both these grounds in turn.

¶ 58. LIRC's analysis begins by addressing the reasonable accommodation question in the terms set forth in the remand order of the court of appeals, "whether the FMLA or regulations enacted thereunder affect Stoughton's claim that it reasonably accommodated Geen's disability, and if so, how." *Geen,* 258 Wis. 2d 498, ¶ 36. In *Geen,* the court of appeals focused on Stoughton's failure to provide Geen with 15 days to submit a completed FMLA form to excuse his January 24 absence, which it concluded "suggests that Stoughton may not have fully complied with the FMLA." *Id.,* ¶ 25. LIRC read the court of appeals' opinion in *Geen* to effectively reject all of Stoughton's arguments regarding its failure to provide Geen with 15 days to submit the FMLA form and its duty to reasonably accommodate. *See Geen,* 258 Wis. 2d 498, ¶¶ 26–30. Based on the law of the case doctrine, and on LIRC's independent conclusion that the court of appeals' analysis was more persuasive than Stoughton's, LIRC concluded that Stoughton refused to reasonably accommodate Geen by failing to provide Geen with 15 days to submit the FMLA form.[12]

_____

[12] Based upon the court of appeals' analysis of the FMLA in *Geen,* LIRC also concluded that Stoughton's failure to provide Geen with 15 days to submit the FMLA form was a violation of the FMLA. We do not address here whether this action violated the FMLA. The 15–day requirement of the FMLA is relevant to our analysis only to the extent that it was incorporated into Stoughton's no-fault attendance policy. As such, Stoughton's failure to adhere to this requirement of its policy supports the reasonableness of LIRC's conclusions that Stoughton terminated Geen because of his disability and that Stoughton refused

¶ 59. Stoughton contends that LIRC's decision improperly substitutes Geen's preferred reasonable accommodation for that offered by Stoughton. Stoughton maintains that it reasonably accommodated Geen by permitting him to remove the "occurrences" assessed for his extended absence from December 1996 to early January 1997 and for January 24 by providing him with an FMLA form which he could complete and submit to avoid being assessed an "occurrence." We disagree and conclude that LIRC's determination that Stoughton refused to reasonably accommodate Geen by failing to allow him sufficient time to submit documentation to avoid being assessed an "occurrence" was reasonable.

¶ 60. Stoughton attempts to conflate its treatment of Geen's December 1996 to January 1997 extended absence with its treatment of his final absence that put him over the number allowed by Stoughton's attendance policy. We note that Geen has not challenged Stoughton's assessment of an "occurrence" for his extended absence from December 1996 to early January 1997. And it would appear that Stoughton provided Geen with ample opportunity to avoid this first "occurrence" by submitting a completed FMLA form, but Geen failed to do so.

¶ 61. Stoughton treated this first disability-related "occurrence" very differently than the second

---

to reasonably accommodate Geen. Regarding the reasonable accommodation analysis, we note that there is nothing magical about a 15-day requirement that makes this time period more reasonable than another. However, we conclude under the facts of this case that LIRC's conclusion that 15 days to submit the documentation was necessary to reasonably accommodate Geen was reasonable. We conclude that the substantive provisions of the FMLA are not relevant to our review of LIRC's decision.

disability-related "occurrence." Contrary to Stoughton's claims, it did not provide Geen with sufficient time to submit a completed FMLA form to avoid being assessed an "occurrence." Stoughton terminated Geen two days after providing him with its standard letter informing him that he had 15 days to submit the FMLA form. Droessler informed Geen that he had three days to submit adequate documentation to excuse the absence, even though Geen informed her that he would be unable to get such documentation from his doctor for at least a week. On these undisputed facts, we affirm LIRC's determination that Stoughton refused to reasonably accommodate Geen by failing to give him sufficient time to submit documentation to avoid being assessed an "occurrence."

¶ 62. LIRC also concluded that Stoughton refused to reasonably accommodate Geen by failing to extend to him "clemency and forbearance" in the form of temporarily tolerating his absences while the medical intervention that was already underway had a chance to resolve the problem of his disability-related absences. LIRC highlighted the court of appeals' decision in *Target Stores*. There, the employee, Crivello, had sleep apnea, which caused her to doze off at work, a violation of a company "loafing" rule. After several somnolent incidents, and shortly after beginning a new treatment for her sleep apnea, Crivello was terminated. Applying a great weight standard of review, the court of appeals upheld LIRC's conclusion that Target Stores had failed to reasonably accommodate Crivello by not exercising "clemency and forbearance" in immediately discharging Crivello and not allowing sufficient time to permit the medical treatment to address the problem. *Target Stores,* 217 Wis. 2d at 17–18. The *Target Stores* court explained:

LIRC's interpretation of "reasonable accommodation" to include forbearing from enforcing the loafing rule while Crivello is undergoing treatment is reasonable. Like a leave of absence, forbearance from enforcing the loafing rule is a temporary accommodation to permit medical treatment which, if successful, will remove the difficulty in performing the job-related responsibility. Whether either [a leave of absence or forbearance from enforcing an employment rule] is a reasonable accommodation in a given case will depend on the facts and circumstances of that case.

*Id.* at 19. The court of appeals rejected Target Stores' position that "an accommodation is reasonable only if it will immediately remove the difficulty in performing job-related responsibilities caused by the handicap." *Id.* at 18.

¶ 63. LIRC observed that *Target Stores* "was similar in many respects to [Geen's] case." *Geen,* ERD No. 199700618 (LIRC, September 12, 2003).

In this case, Geen's migraine condition was sometimes causing him to miss work. However, as was the case in *Target Stores,* Geen's problem had only recently been diagnosed, and he was still at a fairly early stage of treating his disorder. As Crivello had been, Geen was still working with physicians to determine effective medications and to adjust them. It was entirely possible, that development of an appropriate treatment regimen would significantly reduce or even eliminate the problem of periodic absences due to migraine attacks.

*Id.* at pp. 18–19. LIRC noted that this court in *Crystal Lake* accepted LIRC's interpretation that a reasonable accommodation did not necessarily require that an employee be able to perform all job-related duties, only some or most, and that as long as the employee could perform some of the job duties, modification of the

duties could be a reasonable accommodation required of the employer. *See Crystal Lake,* 264 Wis. 2d 200, ¶ 52.

¶ 64. Applying great weight deference to the second part of LIRC's reasonable accommodation determination, we conclude that LIRC's determination that Stoughton refused to reasonably accommodate by failing to extend "clemency and forbearance" was also reasonable.

¶ 65. LIRC reasonably concluded that an employer should exercise "clemency and forbearance" by not immediately terminating an employee where, as here, the employer knows a medical intervention is already underway that has not had the chance to take effect to potentially resolve the problem of the employee's absences.

¶ 66. LIRC's conclusion is consistent with Wis. Stat. § 111.34(1)(b), and is in harmony with both the express purpose of the WFEA "to encourage and foster to the fullest extent practicable the employment of all properly qualified individuals" regardless of disability or other protected status, and its directive that its provisions "be liberally construed for the accomplishment of this purpose." Wis. Stat. § 111.31(3).

¶ 67. As set forth in LIRC's decision, "clemency and forbearance" is not an open-ended requirement mandating that an employer indefinitely suspend its attendance requirements for the disabled employee.[13] Such a mandate would not be a reasonable accommo-

---

[13] In a decision post-dating the decision in this case, LIRC made precisely this point, noting that "an employer is generally not required to indefinitely suspend the application of a reasonable attendance policy to accommodate a disability." *Seil v. Dairy Farmers of Am.,* ERD Case No. 200204104 (LIRC, August 26, 2005). Amicus Wisconsin Manufacturers and Commerce

dation within the meaning of the WFEA. Rather, "clemency and forbearance" requires that an employer "forbear" by temporarily tolerating an employee's disability-related absences under circumstances similar to those presented in this case. It requires "a temporary accommodation to permit medical treatment which, if successful, will remove the difficulty in performing the job-related responsibility." *Target Stores,* 217 Wis. 2d at 19. Here, where Stoughton immediately discharged Geen, LIRC's determination that Stoughton did not exercise "clemency and forbearance" is reasonable.

## C

¶ 68. Finally, Stoughton challenges the remedy ordered by LIRC. Stoughton contends that if the "in-part" test set forth in *Hoell* applies, as we concluded it does under the unique facts of this case, *supra,* ¶ 48, the remedy ordered by LIRC, reinstatement and back pay, was not authorized by *Hoell.* We disagree, and conclude that LIRC properly exercised its discretion in determining the award based upon the correct interpretation of the WFEA and the "in-part" test as described in *Hoell.*

¶ 69. Under Wis. Stat. § 111.39(4)(c), LIRC (or DWD) may award reinstatement and back pay. In general, LIRC (or DWD) has the discretion to award to

asserts that *Seil* demonstrates that LIRC's decision in this case is contrary to established precedent. Amicus is incorrect. *Seil* is not inconsistent with LIRC's holding in this case, which does not require "indefinite" suspension of employer rules, only temporary "forbearance" to allow medical intervention that is already underway to have its intended effect.

a prevailing complainant some or all of the remedies available under subchapter II of Chapter 111. Wis. Stat. § 111.39(4)(c).

¶ 70. In *Hoell*, 186 Wis. 2d at 608–11, the court of appeals endorsed LIRC's statement of the remedies specific to a "mixed-motive" case. As noted above, when the court determines in a "mixed-motive" case that the termination would not have occurred in the absence of the impermissible motivating factor, LIRC has the discretion to award some or all of the following remedies: a cease and desist order, reinstatement, attorney's fees, back pay and interest. *Id.* at 609–610. Only when LIRC determines that the termination would have occurred even in the absence of the impermissible factor is the remedy limited to a cease and desist order and attorney's fees. *Id.*

¶ 71. In this case, LIRC expressly concluded that Geen would not have been terminated but for his disability-related absences. LIRC apparently determined that the full scope of remedies was appropriate here. We conclude that LIRC properly exercised its discretion in making this determination based upon a correct application of the legal standard provided in *Hoell* and the WFEA.[14]

---

[14] The dissent labels LIRC's award to Geen of back pay on his $9.52/hour position "breathtaking" while failing to mention that the award is offset by Geen's interim earnings. Dissent, ¶ 106. Under LIRC's order, Geen's award is calculated by subtracting his earnings from other employment since his termination and from any other statutory offsets. The amount payable to Geen (if any) after this calculation is subject to interest at the rate of 12 percent simple.

Additionally, the dissent calls it "astonishing" that this court affirms LIRC's award to Geen of the maximum remedies allowed under the WFEA, which it claims are allowed only in

### III

¶ 72. In sum, we conclude a more reasonable basis for LIRC's decision is that Stoughton did not follow its own no-fault attendance policy in terminating Geen when it failed to provide him with 15 days, as allowed under the policy, to submit documentation to avoid being assessed an "occurrence." Because Stoughton did not follow its own no-fault attendance policy, it may not claim whatever protection that policy may provide in its termination of Geen. Thus, LIRC's conclusion that Geen was terminated because of his disability is more reasonably grounded on the circumstances surrounding that termination. Based on these circumstances as set forth earlier in this opinion, we conclude that LIRC's conclusion that Stoughton terminated Geen because of his disability was reasonable. We therefore do not address the issue of whether a termination for exceeding the maximum number of absences permitted under a no-fault attendance policy is because of disability under the WFEA when some of the absences were caused by disability and others were not.

¶ 73. We further conclude that LIRC reasonably interpreted and applied the WFEA in determining that Stoughton failed to reasonably accommodate Geen. Additionally, we conclude that its ordered remedy was reasonable. Accordingly, we affirm.

"cases of pure invidious discrimination." Dissent, ¶ 107. This case involves discriminatory intent given Stoughton's refusal to reasonably accommodate Geen's disability, and the full circumstances of Geen's termination, which need not be recounted here. As noted earlier, Wis. Stat. § 111.34(1)(b) provides that it is discrimination based on disability to "[r]efus[e] to reasonably accommodate an employee's or prospective employee's disability," unless the employer can demonstrate that the reasonable accommodation would pose an undue hardship on its business.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 74. PATIENCE D. ROGGENSACK, J., did not participate.

¶ 75. DAVID T. PROSSER, J. (*dissenting*). This case has been litigated for years, at great expense to all parties, because it presents a vital question for Wisconsin employers. The question is whether an employer may apply a facially neutral no-fault attendance policy to terminate an employee, without risk of employment discrimination liability, when some of the employee's absences are caused by disability but most are not. More specifically, does an employer discriminate "because of" disability within the Wisconsin Fair Employment Act when the employer terminates an employee under these circumstances? Does an employer refuse to reasonably accommodate an employee's disability within the meaning of Wis. Stat. § 111.34(1) when the employer promises to disregard disability related absences if an employee submits appropriate family/medical leave certification forms but the employee fails to do so?

¶ 76. The majority avoids answering these important questions—directly—and thus abdicates its role as the state's ultimate policy making court. But it does pick a winner.

¶ 77. To rule in favor of Douglas Geen (Geen), however, without answering any tough questions, the majority is forced to make a disputed factual determination that Stoughton Trailers (Stoughton) violated its own no-fault attendance policy and then to infuse discriminatory intent into Stoughton's unremarkable decision to terminate Geen. The result of all this is to permit an employee to miss work, claim that a key absence was based on disability, and escape any conse-

quence even though he has never produced a single piece of medical documentation supporting the reason for the critical absence.

¶ 78. Because the court's handling of this decision is a classic example of adding insult to injury, I respectfully dissent.

I

¶ 79. This case involves a claim under the Wisconsin Fair Employment Act (WFEA). The WFEA prohibits an employer from terminating an employee "because of" "disability." Wis. Stat. §§ 111.321 and 111.322(1). Employment discrimination "because of" disability includes refusing to "reasonably accommodate" an employee's disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise, or business. Wis. Stat. § 111.34(1)(b).

¶ 80. As the Wisconsin Manufacturers and Commerce (WMC) points out in its amicus brief, the present case raises WFEA issues in a context not previously addressed by this court—absenteeism. WMC notes, "Employee absenteeism directly affects the economic viability and competitiveness of Wisconsin employers. . . . According to the 2005 CCH Unscheduled Absence Survey . . . , the average yearly cost of absenteeism in the United States in 2005 was $660 per employee in paid, unproductive time, which amounted to a financial cost of over $1 million per year for some larger employers." *See 2005 CCH Unscheduled Absence Survey.* In addition, WMC explained that many Wisconsin employers utilize no-fault attendance policies, citing a survey that reported that in the production, maintenance, and service areas, 60 percent of employers with

more than 500 unionized employees, and 46.8 percent of employers with more than 500 non-unionized employees, utilized no-fault attendance policies. *See 2005/2006 Wisconsin & Northern Illinois Policies & Benefits Survey.*

¶ 81. This case presents an opportunity to resolve several legal questions regarding absenteeism and employers' ability to use no-fault attendance policies under the WFEA. Wisconsin employers expect and need guidance on these questions. Instead, the majority leaves the questions for another day.

¶ 82. By leaving these questions for another day, the majority does not disturb the decisions of the Labor and Industry Review Commission (LIRC) and the court of appeals. It does not reverse their decisions or withdraw language from them. It simply moves on. By deciding this case on a narrower ground, the majority has insidiously retained LIRC's decision and the court of appeals' decision as precedent for those future cases that must be decided on grounds broader than the artificially narrow ground used in this case. When a future case arrives, the court of appeals will have no choice but to apply its precedent. *See Cook v. Cook,* 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (stating that "the court of appeals may not overrule, modify or withdraw language from a previously established decision of the court of appeals").[1]

¶ 83. Thus, employers should be wary of applying their facially neutral no-fault attendance policies to

[1] The court of appeals' decision and LIRC's second decision are cited in Rose Ann Wasserman, *Wisconsin Employment Law* §§ 14.58, 14.63 (2004 & Supp. 2007); Rose Ann Wasserman, *A Guide to Wisconsin Employment Discrimination Law* § 3.31 (Supp. 2007); 30 Mental & Physical Disability Law Reporter 678, 800 (Sept./Oct. 2006).

treat all absences alike regardless of the reason for the absence. Ironically, treating all employees alike does not protect employers from liability under the WFEA. Rather, equal treatment of employees leads to a finding of discriminatory intent by employers in adverse employment decisions.

¶ 84. With each new case, Wisconsin seems determined to vindicate the commentator who wrote:

> For years, the employment law purportedly aimed at requiring employers to treat workers neutrally and impartially on their merits, all alike; even affirmative action was shaped in accord with this sort of officially declared goal. But now discrimination is quietly being redefined as the *failure* to treat each employee differently. Nondiscrimination really requires the most subtle and pervasive discrimination, or so the theory goes; treat all employees alike, and you've broken the law.

Walter Olson, *The Excuse Factory* 118 (1997).

## II

¶ 85. The majority defends its decision-making process by invoking the principle that this court "typically decide[s] cases on the narrowest possible grounds." *See* majority op., ¶ 40 (quoting *Barland v. Eau Claire County*, 216 Wis. 2d 560, 566 n.2, 575 N.W.2d 671 (1998)). However, the majority then makes its own factual determinations to craft a narrower ground upon which to decide the case. The majority finds that Stoughton violated its no-fault attendance policy when it failed to provide Geen with 15 days to submit medical documentation before it assessed an occurrence against him. Majority op., ¶ 5. Then it finds that, because Stoughton violated its no-fault attendance policy, it

intentionally discriminated against Geen when it terminated him. *See* majority op., ¶ 49.

¶ 86. This court is not a fact-finding or error correcting court, *see Cook,* 208 Wis. 2d at 188–89; *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980); nevertheless, in this case, the majority determines facts sua sponte. Because this case now turns on specific facts, I am compelled to comment on them.

### III

¶ 87. LIRC made the following findings of fact in its second decision in this case. *Geen v. Stoughton Trailers, Inc.,* ERD Case No. 199700618 (LIRC, Sept. 12, 2003). As of Geen's return to work on January 8, 1997, Geen had accumulated a balance of 5.5 occurrences. Four-and-a-half of those occurrences were not disability related; the other occurrence was disability related. Geen was assessed one occurrence for a disability-related absence (migraines) from December 12, 1996, to January 7, 1997, because he never returned the Department of Labor certification form required to establish that his absence could qualify for FMLA leave. Stoughton, however, did qualify Geen's absence as a medical leave and therefore assessed him only one occurrence for the entire period.

¶ 88. On Thursday, January 23, 1997, Geen took an excused vacation day. On Friday, January 24, 1997, the day after his vacation day, Geen called Stoughton before the start of his shift to report that he could not work because he had a migraine headache. Geen also called Stoughton on Monday, January 27, 1997, to report that he could not work because of headaches. On the following day, January 28, 2007, Geen called Stoughton to report that he was seeing a physician that

day. Geen returned to work on January 29, 1997, and met with Tammy Droessler (Droessler) in the human resources office. She handed Geen a standard letter emphasizing the need to provide Stoughton with medical documentation within 15 days of the letter. The next day, January 30, 1997, Geen saw another physician who gave Geen a note stating that Geen was being evaluated for migraines. Geen gave the note to Droessler on the same day, but Droessler told Geen that he needed a physician's note stating that he could return to work without restrictions. Geen obtained a note from his physician the following day, indicating that he was released for work without restrictions and that he had been unable to work on January 27 and 28. The note did not indicate that he had been unable to work on January 24, 1997. After Geen gave Droessler this note on January 31, 1997, Droessler told Geen that he was being discharged because his medical documentation did not excuse him for Friday, January 24, 1997. This unexcused absence caused Geen to accrue an occurrence for that date, putting him at 6.5 occurrences.

¶ 89. At the time he was discharged, Geen stated that his doctor needed additional time to evaluate him before he could bring in more medical documentation. Droessler told Geen about his option to appeal to Stoughton's Attendance Review Board (ARB). She told Geen that he had three days from that date (January 31) to write a letter to the company's ARB in order to try to reverse the assessment of the occurrence. She told him he could submit medical documentation to the ARB.

¶ 90. On Wednesday, February 5, 1997, the ARB received Geen's appeal in which he stated that he had been having trouble with migraine headaches, was on medicine for depression, had been seen by several

559

doctors, and was having his primary physician evaluate his headaches. *Geen did not submit any medical documentation to the ARB with his letter of appeal.* On February 7, 1997, Geen had a follow up exam with his primary physician. *Geen did not submit any documentation to the ARB about his February 7 visit with his primary physician, nor did he ask his primary physician at that time to complete the form necessary to establish that his absences qualified for FMLA leave. Geen did not submit any such information to the ARB or anyone else at Stoughton, at any time thereafter.*

¶ 91. On February 21, 1997 (more than 15 days after Droessler informed Geen of the need to submit medical documentation), the ARB rejected Geen's appeal. The ARB rejected Geen's appeal because Stoughton had mistakenly believed that Geen had been absent without notice or excuse on January 23, 1997, the day that Geen took for vacation.

¶ 92. In his findings of fact, the Administrative Law Judge quoted from the ARB's memo to Geen, "The Attendance Review Board reviewed your inquiry regarding the occurrence you received for your absences beginning on January 23, 1997. On January 23, 1997, you didn't call in or bring in medical documentation excusing you on that day. Your absence on Thursday puts you at 6[.5] occurrences."

IV

¶ 93. Based on these facts, the majority finds that Stoughton violated its no-fault attendance policy by not giving Geen 15 days to submit medical documentation before it assessed an occurrence against him. From that finding, the majority leaps to the determination—although not explicitly stating so—that, because-

Stoughton violated its no-fault attendance policy, Stoughton *intentionally* discriminated against Geen when it terminated him. *See* majority op., ¶ 48 (stating, "Because Stoughton did not terminate Geen by proper application of its no-fault attendance policy, its argument for precluding the application of the in-part test must fail.").[2] Both of these determinations are without merit.

¶ 94. First, LIRC never found and the facts do not show that Stoughton violated its no-fault attendance policy. Droessler's note to Geen indicated that he had 15 days to submit medical documentation in order to continue on medical leave. When Geen submitted such medical documentation on January 31—justifying his absences on January 27 and 28—he failed to justify his absence on January 24. From that point on, Stoughton was not required to believe that Geen's absence on January 24 was disability related. Unlike some disabilities, migraine headaches are not visibly evident. In addition, migraine headaches are not always permanent —they come and go. Without medical documentation justifying his absence on January 24 (the day after a vacation day), Stoughton could have believed that it was assessing an occurrence against Geen for a non-disability related unexcused absence. When an employee is absent for a non-disability related reason, Stoughton's policy does not require waiting 15 days before it assesses an occurrence against an employee. Perhaps Stoughton was simply following its policy of assessing one occurrence for a non-disability related, unexcused absence.[3]

---

[2] Stoughton argued that the in-part test did not apply in this case because the in-part test requires a finding of discriminatory intent.

[3] In its findings of fact, LIRC trivializes Geen's failure to turn in medical documentation justifying his absence on Janu-

¶ 95. Second, although Droessler's note informed Geen that he had 15 days to submit medical documentation, it did not pinpoint when Stoughton ultimately assesses occurrences against employees. Droessler testified that on many occasions Stoughton would assess an occurrence against an employee, but once the employee turned in the proper medical form, Stoughton would remove the occurrence from the employee's record.

¶ 96. Third, the majority treats January 31 as the official discharge date without acknowledging that Geen's discharge on January 31, 1997, was reversible upon Geen's submittal of the proper FMLA form. Stoughton's discharge of Geen became final on February 21, 1997, more than 15 days after Stoughton advised Geen to submit medical documentation. The majority does not acknowledge that, if Geen had turned in the FMLA form during his appeal to the ARB, both the FMLA and Stoughton's attendance policy would have required Stoughton to reverse the occurrence against Geen. By refusing to acknowledge that Geen's discharge on January 31, 1997, was not final but was contingent upon Geen's submittal of FMLA documentation, the

ary 24. Instead of acknowledging that Geen's failure to turn in medical documentation for January 24 justified the assessment of an occurrence under Stoughton's no-fault attendance policy, LIRC simply surmises that, even if Geen had turned in medical documentation for January 24, Stoughton would still have assessed an occurrence against Geen for the period of January 24, 27, and 28. That finding is purely speculative. If Geen had turned in proper medical documentation for January 24 justifying his absence as disability related, perhaps Stoughton would have continued to wait for Geen to submit the FMLA form and perhaps Stoughton would have considered combining this later period of absence with his previous period of absence from December 1996 to early January 1997.

majority implies, without providing any justification, that Stoughton did not comply with the FMLA.

¶ 97. More disturbing than the majority's factual determination that Stoughton violated its no-fault attendance policy is the majority's determination that, because Stoughton violated its no-fault attendance policy, it intentionally discriminated against Geen when it terminated him. *See* majority op., ¶ 49. Once again, the majority makes a factual determination—this time in direct contradiction of some of LIRC's previous findings.

¶ 98. In its first decision, LIRC explicitly stated that this case did not "involve[] bad intent and invidious discrimination because of hostility towards [Geen] because of his disability." *Geen v. Stoughton Trailers, Inc.,* ERD Case No. 199700618 (LIRC, Aug. 31, 2000). LIRC noted that the Administrative Law Judge "did not make any findings of fact consistent with [Geen's] theory of invidious discrimination." *Id.* LIRC added that it did "not believe that there is substantial evidence supporting a conclusion that Stoughton was motivated by bias against Geen because of his disability." *Id.*

¶ 99. Notably, there has never been a factual finding of discriminatory intent on the part of Stoughton— until the majority said so. Although LIRC eventually reversed its prior decision, it never commented on or invalidated its conclusion that Stoughton lacked discriminatory intent. On appeal, Geen did not argue that Stoughton had discriminatory intent. Rather, Geen argued, and the court of appeals found, that the *Hoell*[4] in-part (mixed motive) test did not require a finding of discriminatory intent. *See Stoughton Trailers, Inc. v. LIRC,* 2006 WI App 157, ¶ 33, 295 Wis. 2d 750, 721 N.W.2d 102.

---

[4] *Hoell v. LIRC,* 186 Wis. 2d 603, 522 N.W.2d 234 (Ct. App. 1994).

¶ 100. This court was supposed to clarify whether the in-part test requires discriminatory intent[5] and to determine whether the in-part test would be appropriate in cases where an employer utilizes its no-fault attendance policy to terminate an employee when some of the employee's absences are disability related and others are not. The majority chooses not to address this issue, thus leaving as precedent the court of appeals' decision that discriminatory intent is not required under the in-part test and that the in-part test is appropriate to apply in cases involving termination under a no-fault attendance policy.

¶ 101. By avoiding this issue and simply infusing discriminatory intent into Stoughton's termination decision, the majority is able to avoid Geen's argument that this case is really a disparate impact case.[6] At oral argument, while continuing with his position that discriminatory intent is not required under the in-part test, Geen argued that this case was a disparate impact case.[7] Geen is correct that under a disparate impact

---

[5] *See State Dep't of Employment Relations v. WERC,* 122 Wis. 2d 132, 142, 361 N.W.2d 660 (1985) (stating, "A violation of SERLA is not established by merely proving the presence of protected concerted activity. The employee must show that the employer was motivated, at least in part, by anti-union hostility."); *Hoell,* 186 Wis. 2d at 614 (stating, "The question of an employer's motivation presents a question of ultimate fact."); *Racine Unified Sch. Dist. v. LIRC,* 164 Wis. 2d 567, 597, 476 N.W.2d 707 (Ct. App. 1991) (stating that the in-part test does not apply to disparate impact claims, where a finding of discriminatory intent is not required).

[6] "Wisconsin law recognizes two theories of employment discrimination—the disparate impact theory and the disparate treatment theory." *Racine Unified Sch. Dist.,* 164 Wis. 2d at 594.

[7] Geen's argument is insightful because the facts of this case do more logically apply to a disparate impact theory. "The

theory, discriminatory intent is not required. *See Racine Unified Sch. Dist. v. LIRC,* 164 Wis. 2d 567, 595, 476 N.W.2d 707 (Ct. App. 1991). However, the in-part test does not apply to disparate impact claims. *Id.* at 597. Furthermore, although a plaintiff need not prove discriminatory intent under a disparate impact claim, the plaintiff must provide "statistics showing, or allowing a reliable deduction," of an adverse disparate impact on a protected group. *See Racine Unified Sch. Dist.,* 164 Wis. 2d at 598; *Kaczmarek v. City of Stevens Point,* ERD Case No. 200200370 (LIRC, Aug. 12. 2003). Geen did not provide such statistics; therefore, he had the burden of proving discriminatory intent. Up until the majority said so, Geen had not met this burden.

¶ 102. The majority is in no position to make this factual determination, especially when reasonable inferences favor a finding that Stoughton lacked discriminatory intent. First, LIRC found no bad intent or invidious discrimination on the part of Stoughton. Second, Stoughton terminated Geen without ever being provided one piece of medical documentation justifying Geen's absence on January 24. Stoughton could have thought it was terminating Geen because of an unexcused, non-disability related absence. Third, the ARB rejected Geen's appeal not because of any alleged disability related absence but because of its mistaken belief that Geen had taken an unexcused absence, rather than an excused vacation day, on January 23. These facts support a reasonable inference that Stoughton did not intentionally discriminate against Geen when it terminated him.

---

disparate impact theory is invoked to attack facially neutral policies which, although applied evenly, impact more heavily on a protected group." *Racine Unified Sch. Dist. v. LIRC,* 164 Wis. 2d 567, 595, 476 N.W.2d 707 (Ct. App. 1991). A no-fault attendance policy is a facially neutral policy.

## V

¶ 103. After making these factual determinations and holding that Stoughton terminated Geen because of disability, the majority determines that Stoughton did not reasonably accommodate Geen. The majority reaches two contradictory conclusions. First, the majority concludes that Stoughton did not reasonably accommodate Geen because it failed to give him sufficient time to submit documentation to avoid being assessed an occurrence. Majority op., ¶ 59. The majority continues, however, and concludes that Stoughton did not reasonably accommodate Geen because it failed to extend "clemency and forbearance" by temporarily suspending its attendance requirements for Geen. Majority op., ¶ 64. Thus, under the majority's second conclusion, even if the majority had found that Stoughton had given Geen 15 days to submit the medical documentation before it terminated him, Stoughton would still have failed to reasonably accommodate Geen. The majority therefore requires an employer to suspend its attendance requirements even if an employee fails to submit medical documentation confirming that his absence was disability related.

¶ 104. The majority's first conclusion—that Stoughton did not reasonably accommodate Geen because it failed to give him 15 days to submit medical documentation—is without merit. Geen had opportunities to turn in the FMLA form while the ARB was considering his appeal.[8] Even after Geen visited his

---

[8] The majority mischaracterizes LIRC's finding when it states that "Droessler informed Geen that he had three days to submit adequate documentation to excuse the absence." Majority op., ¶ 61. Rather, LIRC stated that "Droessler told [Geen] that he had three working days from that date (January 31) to

primary physician during the appeal to the ARB, Geen *neither asked* the physician to fill out the FMLA form *nor asked* the physician for medical documentation concerning his January 24 absence. To this day, Stoughton has never received any medical documentation justifying his absence on Friday, January 24 (the day after his vacation day). Stoughton gave Geen ample opportunity to have his occurrence reversed, but Geen did not take advantage of it. Thus, Stoughton should not be penalized for its employee's failure to provide FMLA documentation.

¶ 105. The majority's second conclusion—that Stoughton did not reasonably accommodate Geen because it failed to exercise "clemency and forbearance"—is also without merit. The majority's conclusion conflicts with the settled principle that where "an employer offers an accommodation which effectively eliminates the conflict between the [disabled] employee's abilities and the job requirements, and which reasonably preserves the affected employee's employment status, the accommodation requirement is satisfied." *Norton v. City of Kenosha,* ERD Case No. 9052433 (LIRC, May 21, 1993); *Owen v. Am. Packaging Co.,* ERD Case No. 8920686 (LIRC, Aug. 31, 1990). In this case, Stoughton offered an accommodation to eliminate any conflict by giving Geen the opportunity to submit FMLA documentation to avoid an

---

write a letter to the company's Attendance Review Board in order to try to reverse the assessment of the occurrence. *She told him he could submit medical documentation to the Board."* (Emphasis added.)

LIRC never found that Droessler told Geen that he had only three days to submit medical documentation. In fact, the parties disputed whether Droessler told Geen at that time that he could turn in the FMLA form within 15 days to remove the occurrence and make the "whole thing go[] away."

occurrence under the no-fault attendance policy. In essence, Stoughton would have exercised clemency and forbearance by not assessing Geen a disability related occurrence if Geen had only provided it with proper FMLA documentation. The majority concludes, however, that Stoughton should have exercised clemency and forbearance without the employee ever having to provide the employer with any medical documentation justifying his absence. Employers must now take employees at their word regarding disability related absences. That is unreasonable accommodation.

## VI

¶ 106. In finding that Stoughton terminated Geen because of disability and failed to reasonably accommodate him, the majority affirms LIRC's conclusion that all of the following remedies are appropriate: a cease and desist order, reinstatement, attorney's fees, back pay and interest. Majority op., ¶ 70. As a result, Stoughton must pay Geen the sum he would have earned as an employee from the date of his discharge until Geen resumes employment with Stoughton or would resume employment with Stoughton but for Geen's refusal of a valid offer of a substantially equivalent position. The amount payable to Geen is also increased by interest at the rate of 12 percent simple. Geen was terminated in early 1997, over 10 years ago. At that time, he was making $9.52 an hour. This is a breathtaking penalty.

¶ 107. The majority upholds LIRC's award after finding discriminatory intent and thus crafting a way to apply *Hoell*'s in-part test. What is astonishing is that the majority awards Geen the maximum remedies allowed under the WFEA for cases of pure invidious discrimination.

## VII

¶ 108. Because the majority avoids deciding the real issue presented in this case and does so by crafting a narrower ground upon which to decide the case, I respectfully dissent.

¶ 109. I am authorized to state that Justice JON P. WILCOX joins this dissent.